HARMEET K. DHILLON
Assistant Attorney General
JESUS A. OSETE
Principal Deputy Assistant Attorney General
   Civil Rights Division
   United States Department of Justice
   950 Pennsylvania Avenue, NW
   Washington, D.C.  20530
   Telephone: (202) 304-8447
   barry.arrington@usdoj.gov

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (Cal. Bar No. 272742)
Assistant United States Attorney
   United States Attorney's Office
   300 North Los Angeles Street, Suite 7516
   Los Angeles, California 90012
   Telephone: (213) 894-2464
   Julie.hamill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
*Additional counsel listed on following page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA and ROBERT BONTA, in his official capacity as head of the California Department of Justice,<br><br>     Defendants. | Case No. 8:2026-cv-1697<br><br>**COMPLAINT**<br><br>ACTION SEEKING STATEWIDE RELIEF |

COMPLAINT
*United States v. State of California, et al.*

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON (TX No. 24129555)
Acting Chief, Second Amendment Section

PATRICK TODD (TX No. 24106513)
TRISTAN SILVA II (DC No. 90037513)
    Trial Attorneys
    Second Amendment Section
    United States Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, D.C.  20530
    Telephone: (202) 304-8447

Attorneys for Plaintiff
UNITED STATES OF AMERICA

COMPLAINT
*United States v. State of California*

Plaintiff, the United States of America submits the following Complaint against Defendant State of California (the "State") and Defendant Robert Bonta, in his official capacity as the head of the California Department of Justice (the "Department").

## I. INTRODUCTION

1. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II.

2. The Second Amendment protects the right of law-abiding citizens to keep and bear arms in common use for lawful purposes. *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008). Because handguns are the most popular weapon chosen by Americans for self-defense, a prohibition of their use is invalid. *Id*. at 629.

3. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

4. Pursuant to Cal. Penal Code § 27595(a), it is illegal for California firearms dealers to sell certain semiautomatic pistols. This statute is commonly known as the "Glock Ban," because it bans the sale of virtually all Glock and Glock-style pistols. California's ban on the sale of the most popular handgun in America obviously violates the Second Amendment.

5. Moreover, to be sold at retail in California, a handgun must be listed on the State's official "Roster" of handguns. To be listed on the Roster, certain handguns must have a chamber-load indicator ("CLI") and a magazine-disconnect mechanism (sometimes referred to as a magazine detachment mechanism) ("MDM"). Until recently, these handguns were also required to have the ability to transfer microscopic characters representing the handgun's make, model, and serial

COMPLAINT
*United States v. State of California*

number onto shell casings fired by the gun (commonly referred to as microstamping capability). As a result of these requirements, no new handguns were added to the Roster between 2013 and 2023, leading this Court to state the following in *Boland v. Bonta*, 662 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023):

> Californians have the constitutional right to acquire and use state-of-the-art handguns to protect themselves. They should not be forced to settle for decade-old models of handguns to ensure that they remain safe inside or outside the home. But unfortunately, the [statutes'] requirements do exactly that. . . . [T]hose requirements are unconstitutional and their enforcement must be preliminarily enjoined.

6. The injunction entered in *Boland* is stayed pending appeal, and the State's legislature recently deferred the microstamping requirement until January 1, 2028. Nevertheless, for the reasons previously stated by this Court, these provisions of the Roster statute violate the Second Amendment. Two weeks ago, the Supreme Court noted that in a case such as this where "the government crosses the line from permissible regulation into unconstitutional infringement, courts have a duty to say so . . . no less in the Second Amendment context than in any other." *United States v. Hemani*, 608 U.S. ___, slip op. 4 (2026).

### PARTIES

7. Plaintiff is the United States of America.

8. The State is a state within the United States of America.

9. Robert Bonta is the Attorney General of California. Cal. Gov't Code § 12510 states: "The Attorney General is head of the [California] Department of Justice." Attorney General Bonta is sued in his official capacity as the head of the California Department of Justice and shall be referred to herein as the "Department."

### JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

3

COMPLAINT
*United States v. State of California*

11.     The Court has authority to grant the remedies Plaintiff seeks pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601. And the United States is authorized to initiate this action against the Defendants under that Act.

12.     The declaratory and injunctive relief that the United States seeks is authorized by 34 U.S.C. § 12601(b) and 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred therein.

## GENERAL ALLEGATIONS

### I.     Standard of Review

14.     In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court set forth the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.   The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

15.     Under step one of the *Bruen* test, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  Another way of saying this is that a law that restricts conduct covered by the plain text of the Second Amendment is presumptively unconstitutional.

16.     At step two, the government (i.e., Defendants here) has an opportunity to rebut any presumption of unconstitutionality that arose under step one by demonstrating that its regulation is consistent with the Nation's historical tradition

4
COMPLAINT
*United States v. State of California*

of firearm regulation. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*.

17. Thus, "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation." *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (internal citation and quotation marks omitted).

## II.    The Glock Ban

### A.    Regulatory Background

18. It is illegal for a California licensed firearms dealer "to sell, offer for sale, exchange, give, transfer, or deliver any semiautomatic machinegun-convertible pistol." Cal. Penal Code § 27595(a). Violations of the Glock Ban may be punished by fine and the suspension or revocation of the offending dealer's license. *See id*. § 27595(b)(1)–(3).

19. Cal. Penal Code § 16885(a) defines a "semiautomatic machine-gun convertible pistol" as:

> [A]ny semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or with common household tools . . . into a machinegun by the installation or attachment of a pistol converter as a replacement for the slide's backplate without any additional engineering, machining, or modification of the pistol's trigger mechanism.

Cal. Penal Code § 16885(a).

20. The paradigmatic handguns the sale of which Cal. Penal Code § 27595(a) bans are manufactured by Glock. Accordingly, Plaintiff shall refer to that statue as the "Glock Ban." Plaintiff's challenge to the statute is not, however, limited to firearms manufactured by Glock. Plaintiff challenges the restriction as to all pistols the sale of which is banned by Cal. Penal Code § 27595(a).

5

COMPLAINT
*United States v. State of California*

21.    A pistol converter is a device that can be attached to a pistol which enables the pistol to fire automatically, meaning it will fire more than one round by a single function of the trigger.  *See* Cal. Penal Code § 17015.  Thus, a pistol converter is a device that transforms a semiautomatic pistol into a machinegun.  The California definition of "machinegun" includes pistol converters.  *See* Cal. Penal Code § 16880(b).  Possession of a machinegun (including a pistol converter) is prohibited.  Cal. Penal Code § 32625(a).  Neither Glock nor any manufacturer of Glock-style pistols makes pistol converters.  That prohibition is not at issue in this case.

22.    Apparently, the State believes it can outlaw perfectly legal and safe firearms if those firearms can be converted into illegal firearms.  This is not the law.  A legal shotgun can be turned into an illegal sawed-off shotgun in a matter of seconds with a common hacksaw.  Surely, this does not mean the State can outlaw shotguns.  A semiautomatic rifle can be converted into a machinegun, but unmodified semiautomatic rifles are "widely accepted as lawful possessions." *Staples v. United States*, 511 U.S. 600, 612 (1994).  The State's argument is directly contrary to the Court's holding is *Staples*.

**B.    The Glock Ban Is Presumptively Unconstitutional**

23.    The United States has carried its burden at *Bruen* step one.  The Glock Ban makes it a crime to for a licensed firearms dealer to sell certain handguns.  Thus, the Glock Ban deprives the citizens of California of the opportunity to acquire those handguns.  "Common sense dictates that the right to bear arms requires a right to acquire arms, just as the right to free press necessarily includes the right to acquire a printing press, or the right to freely practice religion necessarily rests on a right to acquire a sacred text." *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025).  Moreover, in *Bruen*, the Court cited with approval the Third Circuit's decision in *Drummond v. Robinson Twp.*, 9 F.4th 217 (3rd Cir. 2021).  *Bruen*, 597 U.S. at 30.

In *Drummond*, the court held that laws "prohibiting the commercial sale of firearms would be untenable in light of *Heller*." *Drummond*, 9 F.4th at 227 (internal citation and quotation marks omitted).

24.     In summary, the Second Amendment's plain text covers the conduct of those law-abiding Californians who desire to buy and sell the handguns the sale of which the Glock Ban prohibits.  Therefore, the Constitution presumptively protects that conduct.  Another way of saying that is that the Glock Ban is presumptively unconstitutional.

**C.     Defendants Cannot Overcome the Presumption of Unconstitutionality**

25.     Defendants cannot rebut the presumption of unconstitutionality. Glock and Glock style handguns are in common use.  Indeed, as set forth in this section, they are the most popular handgun in America.  There is no historical tradition analogous to a ban of a weapon in common use.  *See Heller*, 554 U.S. at 629.  It follows that there is no historical tradition of banning the purchase and sale of a weapon in common use.  A plaintiff is not required to prove common use as part of their step one showing, but if they do prove common use, they necessarily preclude the government from prevailing under step two.  *See Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1209 (7th Cir. 2023) (Brennan, J., dissenting) (Proving common use is a "sufficient condition" for finding an arm is protected under the history and tradition test).

26.     All factory-stock models of Glock pistols have a cruciform trigger bar. This includes Glock's "Gen 6" and "V series" pistols, which were introduced into the U.S. market in late 2025.  The cruciform trigger bar is integral to Glock's design. Among other things, it is a safety device that ensures that a Glock pistol will not discharge accidentally if dropped.

COMPLAINT
*United States v. State of California*

27. The cruciform trigger bar was present in Glock's patented design by 1982. *See* Frank Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025), https://perma.cc/5D2W-M3Z7 (describing a 1982 Glock patent and noting the trigger bar had a "cruciform shape"). It has thus been a feature of Glock pistols since they were first sold in the U.S. in 1986. *See The Glock Story*, Glock, https://perma.cc/N92H-UXVG.

28. When Glock's Gen 3 patent expired in 2020, many companies began producing handguns based on its exceedingly popular design. These pistols are often referred to as Glock-style pistols. Common models include the Palmetto State Armory Dagger, the Ruger RXM, and many Shadow Systems handguns. Factory-stock versions of these Glock-style pistols are also designed with a cruciform trigger bar.

29. Because factory-stock Glock and Glock-style pistols have a cruciform trigger bar, they satisfy the Glock Ban's definition of "machine gun convertible pistol" because there is a substantial likelihood that virtually all Glock and Glock-style pistols will be deemed to qualify as "readily convert[ible]."

30. The Supreme Court has already held that handguns are in common use and cannot be banned. *See Heller*, 554 U.S. at 629 ("[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.").

31. Semiautomatic handguns with cruciform trigger bars are not different from any other type of semiautomatic handgun in a constitutionally relevant way. Semiautomatic handguns, including those with a cruciform trigger bar, therefore, cannot be banned.

32. Even if Glocks are considered as their own group (which, under *Heller*, they should not be), the Glock Ban is unconstitutional because Glock handguns, as

COMPLAINT
*United States v. State of California*

a group, are also unquestionably in common use for lawful purposes.  In fact, they are the most popular handgun in the nation.  *See*, e.g., *How Glock became America's gun*, CBS NEWS  (Sep.  15, 2013), https://perma.cc/J5E8-42UA.

33.    Analysts estimate that, as of 2020, Glock held nearly 65% of the U.S. market for handguns.  *Gaston Glock & family*, Forbes (Apr.  5,  2021), https://perma.cc/6HWX-6FFP.

34.    According to one source, three Glock handgun models made the top 25 for new guns sold in 2024, placing fourth, seventh, and twenty-second.  *See* Logan Metesh, *Top Selling New Guns of 2024*, Guns & Ammo (Jan. 14, 2025), https://perma.cc/8A5Z-5VQN.

35.    ATF has observed that Glocks are "popular for civilian use."  *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022).

36.    Glock pistols consistently rank among the top-selling firearms in the U.S. civilian market.  *See, e.g., Best-Selling Guns*, Guns.com (May 5, 2026), https://perma.cc/9JGJ-ZXXN (listing two Glock models in the top-five-selling handguns).

37.    Government data confirm the popularity of these types of handguns. For example, in 2021, Glock manufactured 581,944 handguns in the United States. *See* Annual Firearms Manufacturing and Export Report at 13, ATF (2021), https://perma.cc/T6FB-YCAY.  Of those, just 67,106 were exported.  *Id*. at 153.  It follows that, in 2021 alone, Glock manufactured 514,838 handguns for sale in the United States.

38.    Moreover, in 2021, 5,263,341 handguns were imported into the United States. *See* Firearms  Commerce  in  the  United  States at  3,  ATF  (2024), https://perma.cc/P689-LX24.  Of those, 1,688,941 (nearly one-third of the total) were imported from Austria, *id*. at 5, where many Glocks are manufactured.  *See*

9

COMPLAINT
*United States v. State of California*

Glock, Glock Brand, https://perma.cc/2UWY-EARR. It is therefore likely that, in 2021 alone, Glock imported hundreds of thousands of handguns for sale in the United States.

39. In summary, the handguns the sale of which the Glock Ban prohibits are widely available for sale throughout the United States.

40. The Glock Ban bans the sale of constitutionally protected handguns. Therefore, it violates the Second Amendment.

**III.    The "Roster"**

**A.    The Regulatory Scheme**

41. Under California's so-called Unsafe Handgun Act ("UHA"), a handgun may not lawfully be manufactured or sold on the primary market if it is "unsafe." Cal. Penal Code §§ 31910, 32000. An "unsafe handgun" is defined as "any pistol, revolver, or other firearm capable of being concealed upon the person" that does not meet firing reliability requirements, satisfy drop safety requirements, or have certain safety features. *Id*. § 31910.

42. All handgun models that have been tested by a certified testing laboratory and have been determined not to be "unsafe handguns" are added to an official list known as the "Roster." Cal. Penal Code § 32015. Admission to the Roster is valid for one year and must be renewed annually with a fee. Cal. Code Regs. tit 11, §§ 4070(a)-(b) & 4072(b).

43. Over time, the California legislature has changed what features a handgun must have to be considered not "unsafe." When it does so, handguns previously on the Roster that do not have the newly required features are not removed from the Roster, but rather are "grandfathered" and are still permitted to be sold even though they now would be considered "unsafe." *See* Cal. Penal Code § 31910(a)(2)(D), (E); *Boland*, 662 F. Supp. 3d at 1081. However, for each semiautomatic pistol newly added to the Roster, the Department is required to

remove from the Roster three pistols lacking either a CLI or MDM.  *See* Cal. Penal Code § 31910(b).

44.  Since 2007, to be eligible for primary market sale in California, new-to-market semiautomatic pistols must have two safety features designed to limit accidental discharges that occur when someone mistakenly believes no round is in the chamber.  First, a new-to-market centerfire semiautomatic pistol must have a CLI, which is a device that indicates that a cartridge is in the firing chamber.  Cal. Penal Code §§ 16380, 31910(a)(2)(D).  Second, a new-to-market centerfire or rimfire semiautomatic pistol must have a MDM, which is a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the pistol.  *Id*. §§ 16900, 31910(a)(2)(E).

45.  Handguns on the Roster before 2007 that lack a CLI or MDM are "grandfathered" and may still be sold.  *See* Cal. Penal Code §§ 31910(a)(2)(D), (E) (defining as "unsafe handguns" only those without the required features "not already listed on the roster").

46.  Beginning in 2013, new-to-market semiautomatic pistols were also required to include a feature called microstamping.  This requirement mandated that each pistol imprint microscopic arrays of characters that identify the make, model, and serial number of the pistol onto the cartridge or shell casing of each fired round.  *See Boland*, 662 F. Supp. 3d at 1082.  The microstamping requirement prevented any new handgun models from being added to the Roster in the ten years from 2013 to 2023.  *Id*.  Indeed, a decade after the requirement took effect, no firearm manufacturer in the world made a firearm with this capability.  *Id*.  California recently postponed further implementation of the microstamping requirement to January 1, 2028.  The chamber-load indicator and the magazine-disconnect mechanism requirements remain applicable.

47.     As a result of these regulations, as of 2023, *none* of the handguns listed on the Roster met the then-current definition of a handgun that is not "unsafe." *Id*. Not one of the handguns being sold in California had a CLI, MDM, and microstamping ability.  *Id*.  Thus, every single handgun on the Roster was a grandfathered handgun—one the California legislature deemed "unsafe."

48.     The UHA's prohibition on sales of "unsafe" handguns is subject to exceptions.  It does not apply to sales to law enforcement personnel, personnel from agencies including the Department, a police department, a sheriff's official, a marshal's office, Department of Corrections and Rehabilitation, the California Highway Patrol, and the district attorney's office, or any member of the military. *See* Cal. Penal Code §§ 32000(b)(4).

49.     The UHA does not prohibit possessing Off-Roster handguns lawfully acquired on the secondary market or lawfully transferred into California.  *See id*. § 32110.  The result is that "unsafe" Off-Roster handguns may be purchased by ordinary people on the secondary market from law enforcement officials and others, often at a high markup.  *Boland*, 662 F. Supp. 3d at 1082.

**B.     The Roster Is Presumptively Unconstitutional**

50.     The United States has carried its burden at *Bruen* step one.  The challenged UHA provisions unquestionably infringe on the right to keep and bear arms because the UHA prevents California citizens from acquiring state-of-the-art handguns for self-defense.  *Boland*, 662 F. Supp. 3d at 1084.  Therefore, the Constitution presumptively protects that conduct, and the challenged provisions of the UHA are presumptively unconstitutional.  *Id*. at 1086.

**C.     Defendants Cannot Overcome the Presumption of Unconstitutionality**

51.     The State has failed to proffer any historical regulation analogous to the UHA's chamber-load indicator, magazine-disconnect mechanism, and

12
COMPLAINT
*United States v. State of California*

microstamping requirements. *Id*. at 1089. Accordingly, those requirements are unconstitutional. *Id*.

**III.    The Conduct of California Law Enforcement Officers Violates Section 12601**

52.    The California Attorney General is head of the Department. Cal. Gov't Code § 12510. The California Attorney General is the chief law enforcement officer of the State, and it is his duty to see that the laws of the State are uniformly and adequately enforced. *Steen v. App. Div. of Superior Ct*., 331 P.3d 136, 141 (Cal. 2014); Cal. Const. art. V, § 13.

53.    The Attorney General and special agents and investigators of the Department are peace officers. Cal. Penal Code § 830.1(b). Their authority extends to any place in the State where a public offense has been committed or where there is probable cause to believe one has been committed.

54.    The California Bureau of Firearms is one of the bureaus of the Department's Division of Law Enforcement. Special Agents (sworn peace officers under Penal Code § 830.1(b)) of the California Bureau of Firearms enforce the State's firearms laws, including the Glock Ban and the UHA.

**IV.    The United States Is Authorized to Bring this Action under Section 12601**

55.    As pertinent to this action, 34 U.S.C. § 12601(a) ("Section 12601(a)") states:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

13

COMPLAINT

*United States v. State of California*

56.     The State is a governmental authority, as that term is used in Section 12601(a).

57.     The Department is a governmental authority, as that term is used in Section 12601(a).

58.     California Law Enforcement Officers (hereinafter, "CA LEOs"), including CA LEOs employed by the Department, are fulfilling (and will continue to fulfill unless enjoined) their statutory duty to enforce the State's laws described herein.  When CA LEOs and the Department enforce these laws, they are engaging in a pattern or practice of conduct by law enforcement officers.

59.     As set forth above, these laws have been enforced in a manner that violates the Second Amendment.  Accordingly, there is a pattern or practice of conduct by the CA LEOs that deprives persons of rights, privileges, or immunities secured or protected by the Constitution. Therefore, Defendants are in violation of 34 U.S.C. § 12601(a).

60.     34 U.S.C. § 12601(b) states:

> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1)[1] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

61.     The United States brings this action pursuant to the authority set forth in Section 12601(b) to remedy Defendants' violation of Section 12601(a).

**FIRST CLAIM FOR RELIEF**
**(Violation of 34 U.S.C. § 12601(a))**
**(Second Amendment)**

62.     Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

---

[1] [*sic*] This should state "paragraph (a)."

14
COMPLAINT
*United States v. State of California*

63. CA LEOs and the Department engaged in a pattern or practice of conduct by law enforcement officers that deprived persons of rights secured and protected by the Constitution in violation of 34 U.S.C. § 12601(a) by enforcing the laws described herein.

64. Unless this Court enjoins Defendants and also grants the declaratory relief the United States describes below, Defendants will continue to engage in the pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A. Entry of a declaratory judgment pursuant to 28 U.S.C. § 2201(b), declaring that:

(1) The State is a "governmental authority" as that term is used in Section 12601(a);

(2) CA LEOs are "law enforcement officers" as that term is used in Section 12601(a);

(3) When CA LEOs and the Department enforce the State's laws described herein, they are acting as agents of (or otherwise acting on behalf of) the State;

(4) When CA LEOs and the Department enforce the State's laws as described above, they are engaging in a pattern or practice of conduct by law enforcement officers; an

(5) The effect of that pattern or practice of conduct is to deprive the citizens of their rights guaranteed by the Second Amendment and the Fourteenth Amendment.

COMPLAINT
*United States v. State of California*

B.    Entry of permanent injunctive relief pursuant to Federal Rule Civil Procedure 65 enjoining Defendants and their agents from enforcing the Glock Ban and the provisions of the UHA described above, including an order that:

(1)    Defendants and their agents and employees refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of unlawful conduct described herein;

(2)    Defendants and their agents and employees adopt and implement policies and procedures to remedy the pattern or practice of unlawful conduct described herein; and

(3)    Defendants adopt systems that identify and correct conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

C.    Such other and additional relief as the interests of justice may require.

Respectfully submitted this 1st day of July 2026.

*/s/ Barry K. Arrington*
Barry Arrington
Acting Chief
Second Amendment Section

*/s/ Julie A. Hamill*
Assistant United States Attorney

COMPLAINT
*United States v. State of California*