ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General
CHRISTINA MCCALL
SABRINA T. MCGRAW
EDWARD P. WOLFE
Deputy Attorneys General
State Bar No. 247835
  600 W Broadway, STE 1800
  San Diego, CA 92101-3375
  Telephone:  (619) 321-5426
  Fax:  (916) 731-2124
  E-mail:  Edward.Wolfe@doj.ca.gov
*Attorneys for Defendants,
State of California and Robert Bonta, in his official
capacity as head of the California Department of
Justice*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA and ROBERT BONTA, in his official capacity as the head of the California Department of Justice,**<br><br>Defendants. | Case No. 8:26-cv-1697-AH-MBK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF 3)**<br><br>Date:  Not Set<br>Time:  Not Set<br>Courtroom:  Los Angeles Courtroom 9C<br>Judge:  Hon. Anne Hwang<br>Trial Date:  Not Set<br>Action Filed: July 1, 2026 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................3

LEGAL STANDARD .............................................................................................6

ARGUMENT...........................................................................................................7

    I.     The United States's Delay Defeats Its TRO Request. .........................8

        A.    The Delay Negates Any Irreparable Harm Justifying a TRO. ........................................................................................8

        B.    Due to This Delay, the TRO Is Equitably Barred by Laches. ...................................................................................11

            1.    The United States's Eight-Month Delay Is Unreasonable. ....................................................11

            2.    The United States's Eight-Month Delay Is Prejudicial. .......................................................12

        C.    Especially Given This Delay, the Equities Disfavor a TRO. ......................................................................................13

    II.    The United States Has Failed to Show that Its Novel Use of a Federal Statute Focused on Police Misconduct Can Be Used to Facially Challenge a State Law...............................................14

    III.    Even If the United States Could Mount a Facial Second Amendment Challenge Under Section 12601, It Has Not Established a Second Amendment Violation.....................................17

CONCLUSION.....................................................................................................20

i

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* (*AFGE*)
--- F.4th ----, 2026 WL 1742911 (9th Cir. June 17, 2026)....................................7

*Ariz. Libertarian Party v. Reagan*
189 F. Supp. 3d 920 (D. Ariz. 2016)..............................................11, 12, 13

*Arroyo Escondido, LLC v. Balmoral Farm, Inc.*
No. 2:19-cv-08464, 2023 WL 3564723 (C.D. Cal. Mar. 31, 2023)...................11

*B&L Prods., Inc. v. Newsom*
104 F.4th 108 (9th Cir. 2024)...............................................................19

*Boland v. Bonta*
No. 23-55276 (9th Cir. Mar. 27, 2023) .....................................................6

*Bolbol v. Rowell Ranch Rodeo, Inc.*
673 F. Supp. 3d 1099 (N.D. Cal. 2023)....................................9, 10, 12

*Burrows v. Onewest Bank*
No. 12-cv-00995, 2012 WL 12882754 (N.D. Cal. Apr. 5, 2012) .................9, 11

*Citibank, N.A. v. Citytrust*
756 F.2d 273 (2d Cir. 1985) ..................................................................9

*Cuviello v. City of Vallejo*
944 F.3d 816 (9th Cir. 2019)................................................................10

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland
Sec.* (*DSSA*)
108 F.4th 194 (3d Cir. 2024)............................................................9, 10

*Doe v. Bd. Of Trs. of Leland Stanford Junior Univ.*
No. 5:26-CV-03809, 2026 WL 1215631 (N.D. Cal. May 4, 2026)...............8, 10

*Doe v. Bonta*
101 F.4th 633 (9th Cir. 2024).............................................................17

*Duncan v. Bonta*
133 F.4th 852 (9th Cir. 2025) .......................................13, 18, 19, 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Earth Island Inst. v. Carlton*
626 F.3d 462 (9th Cir. 2010) ........................................................................ 7

*Evergreen Safety Council v. RSA Network Inc.*
697 F.3d 1221 (9th Cir. 2012) ............................................................... 11, 13

*Hernandez v. Sessions*
872 F.3d 976 (9th Cir. 2017) ...................................................................... 10

*InfoKorea, Inc. v. MBC Am. Holdings, Inc.*
No. 16-cv-6480, 2016 WL 9459289 (C.D. Cal. Aug. 31, 2016) .......................... 8

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*
304 F.3d 829 (9th Cir. 2002) ...................................................................... 11

*Jaymes v. Bonta*
No. 3:25-cv-02711-JAH-DEB (S.D. Cal. filed Oct. 13, 2025), 2025
WL 2932904 ............................................................................................... 5

*Knife Rights, Inc. v. Bonta*
165 F.4th 1330 (9th Cir. 2026) ................................................................... 17

*Kohls v. Ellison*
166 F.4th 728 (8th Cir. 2026) ................................................................. 9, 10

*Martia v. Specialized Loan Servicing, LLC*
No. 18-cv-8875, 2018 WL 7377936 (C.D. Cal. Oct. 24, 2018) .......................... 8

*Maryland v. King*
567 U.S. 1301 (2013) ................................................................................ 13

*Mazurek v. Armstrong*
520 U.S. 968 (1997) ................................................................................... 7

*Mintz v. Chiumento*
724 F. Supp. 3d 40 (N.D.N.Y. 2024) ........................................................... 12

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*
597 U.S. 1 (2022) ............................................................... 13, 17, 18, 19, 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Nken v. Holder*
556 U.S. 418 (2009) ........................................................................................ 7

*Perdomo v. Noem*
815 F. Supp. 3d 1057 (C.D. Cal. 2025) ............................................................ 8

*Positive Ions, Inc. v. ION Media Networks, Inc.*
No. 06-cv-4296, 2007 WL 9701964 (C.D. Cal. Aug. 6, 2007) .......................... 9

*Renna v. Bonta*
No. 23-55367 (9th Cir. Apr. 14, 2023) .............................................................. 6

*Roe v. Critchfield*
137 F.4th 912 (9th Cir. 2025) ............................................................................ 7

*Sampson v. All Am. Home Assistance Servs., Inc.*
No. 1:13-CV-495-WSD, 2013 WL 12322089 (N.D. Ga. Mar. 7, 2013) .......................................................................................................... 14

*Six v. Newsom*
462 F. Supp. 3d 1060 (C.D. Cal. 2020) ......................................................... 7, 8

*Teixeira v. Cnty. of Alameda*
873 F.3d 670 (9th Cir. 2017) .......................................................................... 18

*To Be Ltd. P'ship v. Hudson*
No. 20-cv-3238, 2020 WL 13586043 (C.D. Cal. Apr. 23, 2020) ..................... 8

*UnifySCC v. Cody*
No. 22-cv-01019, 2022 WL 686310 (N.D. Cal. Mar. 8, 2022) ...................... 8, 9

*United States v. City & Cnty. of Denver*
No. 1:26-cv-01929-SKC-TPO (D. Colo. filed May 5, 2026) .......................... 15

*United States v. Colorado*
No. 1:26-cv-01950-SKC-TPO (D. Colo. filed May 6, 2026) ..................... 14, 15

*United States v. Commonwealth of Virginia*
No. 3:26-cv-00610 (E.D. Va. filed July 1, 2026) ............................................ 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. County of Maricopa, Arizona*
  889 F.3d 648 (9th Cir. 2018) ................................................................. 16

*United States v. District of Columbia*
  No. 1:25-cv-04458-APM (D.D.C. filed Dec. 22, 2025) ........................... 14, 15

*United States v. Gov't of the Virgin Islands*
  No. 3:25-cv-00050-ER-GAT (D.V.I. filed Dec. 16, 2025) ......................... 14

*United States v. Kittson*
  161 F.4th 619 (9th Cir. 2025) ................................................................. 19

*United States v. Los Angeles Cnty. Sheriff's Dep't*
  No. 2:25-cv-9323-SPG-ADS (C.D. Cal. filed Sept. 30, 2025) .................. 14

*Vasquez Perdomo v. Noem*
  148 F.4th 656 (9th Cir. 2025) ................................................................. 10

*Whirlpool Corp. v. Marshall*
  445 U.S. 1 (1980) .................................................................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008) .................................................................................. 7

*Wolford v. Lopez*
  609 U.S. __, 2026 WL 1825723 (U.S. June 25, 2026) ............................. 20

*Xuyue Zhang v. Barr*
  612 F. Supp. 3d 1005 (C.D. Cal. 2020) .................................................. 6

**STATUTES**

34 U.S.C.
  § 12601 ..................................................................................... *passim*

42 U.S.C.
  § 1983 .............................................................................................. 5, 6
  § 14141 ............................................................................................ 15

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Penal Code
§ 16380 ...................................................................................... 6
§ 16885 .............................................................................. 1, 3, 6
§ 16900 ...................................................................................... 6
§ 17015 ................................................................................... 1, 3
§ 27595 ................................................................................ 1, 3, 4
§ 31910 ...................................................................................... 6
§ 32000 ................................................................................... 5, 6
§ 32103 ................................................................................. 1, 18

Cal. Code Regs. tit. 11, § 4082 ................................................... 3

**CONSTITUTIONAL PROVISIONS**

First Amendment ..................................................................... 9, 10

Second Amendment ................................................................ *passim*

Fourteenth Amendment ................................................................ 10

**COURT RULES**

Fed. R. Civ. P. 65 ....................................................................... 8

C.D. Cal. R. 77-1 ........................................................................ 8

**OTHER AUTHORITIES**

ATF, *National Firearms Commerce and Trafficking Assessment: NFCTA Updates, New Analysis, and Policy Recommendations*, Vol. IV (last updated Apr. 6, 2026) https://www.atf.gov/media/18611/download ...................................... 4

ATF, *National Firearms Commerce and Trafficking Assessment: NFCTA Updates, New Analysis, and Policy Recommendations*, Vol. IV, Part V, Privately Made Firearms Updates and New Analysis at 1, https://www.atf.gov/sites/default/files2/nfcta_volume_iv_-_part_v_0.pdf ................................................................................... 4

California Assembly Bill No. 1127 ........................................... *passim*

vi

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*The Civil Rights Division's Pattern and Practice Police Reform Work:*
   *1994-Present* (Jan. 2017),
   https://oag.ca.gov/sites/all/files/agweb/pdfs/ripa/crd-pattern.pdf ...................... 15

*Handguns Certified for Sale* (last visited July 2, 2026),
   https://oag.ca.gov/firearms/certified-handguns/search ......................................... 6

Libor Jany, Richard Winton, and Kevin Rector, *Sacramento massacre*
   *shows rising dangers of handguns converted into automatic*
   *weapons,* L.A. Times (Apr. 7, 2022),
   https://www.latimes.com/california/story/2022-04-07/la-me-
   sacramento-shooting-automatic-weapons. ............................................................ 4

The Unsafe Handgun Act (UHA) ...................................................................... 5, 6

Violent Crime Control & Law Enforcement Act, Pub. L. No. 103-322,
   § 210401, 108 Cal. Stat. 1796 (1994) ................................................................. 2

**INTRODUCTION**

In October of last year, the California Legislature enacted, and Governor Gavin Newsom signed into law, California Assembly Bill 1127 ("AB 1127"). This important public safety regulation generally prohibits the retail sale of a specified group of semiautomatic pistol models with design features that are uniquely susceptible to ready conversion into a machinegun. This law applies specifically to those "with a cruciform trigger bar that can be readily converted by hand or with common household tools" into a machinegun by installing a pistol converter device to the back of the pistol "without any additional engineering, machining, or modification of the pistol's trigger mechanism." Cal. Penal Code §§ 27595(a), 16885, 17015. This retail sales restriction became operative on July 1, 2026, and California firearms dealers have been on notice since December 2025 of the specific pistol models that may not be sold at retail effective July 1. *See* Declaration of Sabrina McGraw in Support of Opposition to TRO ("McGraw Decl."), Ex. 1. Although the restriction took effect on July 1, exceptions allow firearms dealers to sell existing inventory of the pistols covered by AB 1127. *Id.* at § 27595(a), (c)(1).

Semiautomatic pistol models covered by AB 1127 may also become available for retail sale in California with design modifications so they cannot readily be converted into machine guns, Cal. Penal Code § 16885; *see also id.* at § 32103. One manufacturer is already engaging in such efforts, disclosing in a court filing unrelated to this case that it "has made extensive efforts to redesign GLOCK pistols to prevent the use of known MCDs [machinegun conversion devices]." McGraw Decl., Ex. 2 at 017.

Eight months after AB 1127 was signed into law, six months after dealers were notified of the covered pistol models, and on the day its sales restriction takes effect, the United States filed this lawsuit on the novel theory that that the California Department of Justice is engaging in a pattern or practice of depriving its residents of their Second Amendment rights by enforcing AB 1127, purportedly in

1

violation of 34 U.S.C § 12601. ECF No. 1, Compl. ¶¶ 62–64. The United States also submitted an emergency application for a temporary restraining order (TRO). The application says nothing about why the United States waited over eight months after AB 1127's enactment to sue, or why emergency relief suddenly is needed.

The *ex parte* application falls far short of establishing the federal government's entitlement to the "extraordinary remedy" of a TRO. The United States's unexplained eight-month delay in bringing suit precludes a finding of irreparable harm. That delay prejudices California's defense of its duly-enacted public safety regulation—forcing this Court to consider the United States' novel use of 34 U.S.C. § 12601 and AB 1127's constitutionality on minimal briefing and without argument. This renders the requested TRO barred by laches as well—which is to say, granting it would be wholly inequitable.

While the Complaint and TRO focus on the alleged unconstitutionality of AB 1127 under the Second Amendment, they do not meaningfully address whether the United States can use 34 U.S.C. § 12601 to challenge the constitutionality of a State's duly enacted law. No prior Administration has attempted to do so since 34 U.S.C. § 12601 became law in 1994, *see* Violent Crime Control & Law Enforcement Act, Pub. L. No. 103-322, § 210401, 108 Stat 1796 (1994). But this year alone, the United States has invoked Section 12601 to mount similar Second Amendment challenges against other state and local governments, and none of those courts has yet decided whether Section 12601 can be used by the United States in this novel manner. Such an important issue is not one that should be decided on an *ex parte* application for a TRO, particularly when the United States has failed to explain why it waited over eight months to file this lawsuit.

Accordingly, the TRO should be denied and Defendants request the Court set a reasonable schedule to govern future proceedings, including the United States' request for a preliminary injunction and Defendants' anticipated motion to dismiss.

For all these reasons, this Court should deny the TRO.

## BACKGROUND

The United States directs its TRO at California's AB 1127, a firearm statute that was signed into law over eight months ago on October 10, 2025. Beginning July 1, 2026, AB 1127 restricts licensed firearms dealers from being able to, unless certain exceptions apply, "sell, offer for sale, exchange, give, transfer, or delivery" of pistol models that meet the definition of "semiautomatic machinegun-convertible pistols." Cal. Penal Code § 27595(a); *see also id.* § 16885. Such pistol models are defined as "any semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or with common household tools, as defined in Section 4082 of Title 11 of the California Code of Regulations, into a machinegun by the installation or attachment of a pistol converter as a replacement for the slide's backplate without any additional engineering, machining, or modification of the pistol's trigger mechanism." *Id.* § 16885(a); *see also id.* § 17015 (defining "pistol converter").

AB 1127 does not prohibit the possession of semiautomatic machinegun-convertible pistols. *See id.* § 27595(a). Additionally, AB 1127 permits firearms dealers to sell out any remaining inventory of machinegun-convertible pistols delivered to the dealer before January 1, 2026, and permits private individuals to transfer and acquire such pistols through private-party transactions so long as the transaction is conducted through a licensed firearms dealer. *Id.* § 27595(c)(1), (3). AB 1127's sales prohibition also does not apply to transfers relating to repairs or returning a covered pistol after it has been stored at a dealer for safekeeping. *Id.* § 27595(c)(4), (6).

On December 26, 2025, the California Department of Justice, Bureau of Firearms provided an advisory to all licensed California firearm dealers containing a list of the semiautomatic pistol models that at that time were available for retail sale and also, qualified as machinegun-convertible pistols under AB 1127, and thus could not be sold at retail beginning July 1, 2026. McGraw Decl., Ex. 1. AB 1127

generally became effective on January 1, 2026, but the retail sales restriction at Penal Code section 27595(a) did not take effect until July 1, 2026. The advisory listed pistol models from three manufacturers, and included multiple models that one of the manufacturers had already discontinued. *Id.*

AB 1127 was a reasonable legislative response to the growing spread of, and increasing accessibility to, what California law calls a "pistol converter," and what the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (U.S. ATF) calls "machinegun conversion devices" or "MCDs." *See* ATF, *National Firearms Commerce and Trafficking Assessment: NFCTA Updates, New Analysis, and Policy Recommendations*, Vol. IV, Director's Foreword at 1 (last updated Apr. 6, 2026) https://www.atf.gov/media/18611/download. As the U.S. ATF explains, machinegun conversion devices "are small, concealed devices that transform a semi-automatic firearm into an illegal machinegun in seconds." *Id.* These devices, which can be 3-D printed, are "designed for use on certain semiautomatic pistols," and are "easily integrated" into such pistols to "illegally convert them to fire automatically." *Id.* at Part V, Privately Made Firearms Updates and New Analysis at 1, https://www.atf.gov/sites/default/files2/nfcta_volume_iv_-_part_v_0.pdf. According to the U.S. ATF, the number of MCDs, or pistol converters, recovered in crimes skyrocketed 784% between 2019 (658) and 2023 (5,816), and California was in the top ten states where these devices were recovered. *Id.* at 7–8. These devices have been used to convert pistols into machineguns that were used during mass shootings in Sacramento in 2022 and in Fresno in 2019, just to name a couple. *See* Libor Jany, Richard Winton, and Kevin Rector, *Sacramento massacre shows rising dangers of handguns converted into automatic weapons*, L.A. Times (Apr. 7, 2022), https://www.latimes.com/california/story/2022-04-07/la-me-sacramento-shooting-automatic-weapons.

Three days after AB 1127 was signed into law in October 2025, the National Rifle Association, Firearms Policy Coalition, Second Amendment Foundation, two

individuals, and a California firearms dealer filed suit challenging the constitutionality of AB 1127 under the Second Amendment pursuant to 42 U.S.C. § 1983. Complaint, *Jaymes v. Bonta*, No. 3:25-cv-02711-JAH-DEB (S.D. Cal. filed Oct. 13, 2025), 2025 WL 2932904, Dkt. No. 1. However, the *Jaymes* plaintiffs subsequently dismissed the case six months later, in April 2026. Order Granting Joint Motion to Dismiss, *Jaymes* (S.D. Cal. Apr. 13, 2026), Dkt. No. 31.

On June 24, 2026, the Administration sent a letter to California Governor Gavin Newsom and California Attorney General Rob Bonta threatening to sue California over the constitutionality of AB 1127 and the Unsafe Handgun Act ("UHA", discussed further *infra*). McGraw Decl., Ex. 3. The letter stated that the U.S. Department of Justice would consider deferring the lawsuit if California responded by June 30, 2026 agreeing to pre-suit negotiations that would "at a minimum" require California to agree to "(1) immediately cease enforcement of the [UHA and AB 1127]; (2) acknowledge the unconstitutionality of these laws; and (3) agree to enter into a court-enforceable decree permanently enjoining the State from violating its citizens' constitutional rights through these or any similar laws." *Id.* at 022. The California Department of Justice provided a response on June 30, 2026, refusing to agree to the proposed "pre-suit negotiations" conditions. Declaration of Tristan Silva II in Support of TRO at Ex. A.

On July 1, 2026, the United States filed a Complaint and the present TRO. While the Complaint challenges AB 1127 and the UHA, the TRO seeks emergency relief only with respect to AB 1127.

The UHA generally prohibits the manufacture or retail sale of any "unsafe handgun" in California, making a violation punishable by imprisonment in a county jail for not more than one year. Cal. Penal Code § 32000(a). Under the UHA, the California Department of Justice must maintain a Roster of Certified Handguns (Handgun Roster) that have been tested by a certified independent laboratory and meet other public safety requirements, which for newly added semiautomatic pistol

models includes having two safety devices—a chamber load indicator and a magazine disconnect mechanism—that help to prevent the accidental firing of the pistol. *Id.* §§ 31910, 32015(a); *see also id.* § 16380 (defining chamber load indicator); *id.* § 16900 (defining magazine disconnect mechanism). Handgun models (*i.e.*, pistols and revolvers) that do not appear on the Handgun Roster cannot be sold at retail by California firearms dealers, but they can be possessed and acquired through private-party transactions if done so through a licensed dealer. *Id.* §§ 32000(a), 32110.

Second Amendment challenges to the UHA pursuant to 42 U.S.C. § 1983 have been briefed, argued, and are currently pending before the Ninth Circuit. *Boland v. Bonta*, No. 23-55276 (9th Cir. Mar. 27, 2023); *Renna v. Bonta*, No. 23-55367 (9th Cir. Apr. 14, 2023). The United States has filed a Notice of Related Case to *Boland v. Bonta*. ECF No. 5.

As of the date of this brief, there are 956 handgun models on the Handgun Roster that are available for retail sale by licensed firearms dealers. Cal. Dep't of Just., *Handguns Certified for Sale* (last visited July 2, 2026), https://oag.ca.gov/firearms/certified-handguns/search. AB 1127 operates independently of the UHA and Handgun Roster, meaning that if a pistol model falls within AB 1127's definition of a machinegun-convertible pistol at California Penal Code section 16885, it cannot be sold at retail even if listed on the Handgun Roster, as explained in the advisory sent to all licensed California firearms dealers in December 2025. McGraw Decl., Ex. 1.

## LEGAL STANDARD

The same factors and considerations that govern issuance of a preliminary injunction control whether a temporary restraining order is proper. *See Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1012 (C.D. Cal. 2020) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).

A TRO is "an extraordinary remedy never awarded as of right." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* (*AFGE*), --- F.4th ----, 2026 WL 1742911, *5 (9th Cir. June 17, 2026) (slip op.) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)); *see Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020). To secure this extraordinary relief, a plaintiff bears a "heavy burden." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). It must put forth "substantial proof" constituting a "*clear showing*" that a TRO is warranted. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Six*, 462 F. Supp. 3d at 1067. This requires establishing four factors: "[1] a likelihood of success on the merits, [2] irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in its favor, and [4] that an injunction is in the public interest." *AFGE*, 2026 WL 1742911, *5 (citing *Winter*, 555 U.S. at 20). Where the government is the opposing party, the last two factors merge. *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ARGUMENT

The United States's request for a TRO over eight months after AB 1127 was signed into law should be denied on account of the United States's unreasonable delay. That delay negates any assertion of irreparable harm. It also prejudices California in its defense of a democratically enacted public safety measure, which means the requested TRO is also barred by the doctrine of laches. For the same reason, the balance of the equities overwhelmingly disfavors this relief. Nor has the United States established that it is likely to succeed on the merits given its novel use of 34 U.S.C. § 12601 to challenge the constitutionality of a state law. Indeed, similar applications of Section 12601 have been challenged by other States defending against similar lawsuits brought by the United States in other jurisdictions, with no court yet having ruled on its propriety. A TRO is not a proper vehicle to decide such an important question.

**I.    THE UNITED STATES'S DELAY DEFEATS ITS TRO REQUEST.**

**A.    The Delay Negates Any Irreparable Harm Justifying a TRO.**

The United States's eight-month delay in bringing this lawsuit negates any claim that an emergency TRO is necessary to avert irreparable harm.

A temporary restraining order is "a remedy reserved for 'emergency situations.'" *Doe v. Bd. Of Trs. of Leland Stanford Junior Univ.*, No. 5:26-CV-03809, 2026 WL 1215631, at *2 (N.D. Cal. May 4, 2026) (quoting *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 20 n.33 (1980)); *cf.* C.D. Cal. R. 77-1 (outlining procedures for "Emergency Matters"). It is designed to "last for a short period of time," *Perdomo v. Noem*, 815 F. Supp. 3d 1057, 1064 (C.D. Cal. 2025), typically, no more than "14 days." Fed. R. Civ. P. 65(b)(2). Its purpose is to "prevent irreparable harm" during this brief period, until "a preliminary injunction hearing may be held." *Six*, 462 F. Supp. 3d at 1067. A party facing an urgent threat of irreparable harm should "seek a restraining order as quickly as possible." *Doe*, 2026 WL 1215631, at *2 (citation omitted).

When a party inexplicably "delay[s] in seeking relief," its own conduct suggests emergency relief is unnecessary, undermining its tardy TRO request. *Id.* (citation omitted). Consequently, Ninth Circuit courts commonly deny TRO applications where a party's delay demonstrates a lack of irreparable harm. *See, e.g.*, *Doe*, 2026 WL 1215631 (eight-month delay), at *2; *UnifySCC v. Cody*, No. 22-cv-01019, 2022 WL 686310, at *2 (N.D. Cal. Mar. 8, 2022) (seven-month delay); *To Be Ltd. P'ship v. Hudson*, No. 20-cv-3238, 2020 WL 13586043, at *2 (C.D. Cal. Apr. 23, 2020) (two-week delay); *Martia v. Specialized Loan Servicing, LLC*, No. 18-cv-8875, 2018 WL 7377936, at *1 (C.D. Cal. Oct. 24, 2018) (seven-month delay); *InfoKorea, Inc. v. MBC Am. Holdings, Inc.*, No. 16-cv-6480, 2016 WL 9459289, at *2 (C.D. Cal. Aug. 31, 2016) (three-month delay).

Even where irreparable harm is typically presumed for the legal violation asserted, courts decline to order preliminary relief to litigants whose "delay in

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

seeking relief" evidences "a reduced need for … drastic, speedy action," thus "render[ing] inoperative [that] presumption." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *Positive Ions, Inc. v. ION Media Networks, Inc.*, No. 06-cv-4296, 2007 WL 9701964, at *9 (C.D. Cal. Aug. 6, 2007) (same); *e.g.*, *Burrows v. Onewest Bank*, No. 12-cv-00995, 2012 WL 12882754, at *1 (N.D. Cal. Apr. 5, 2012) (denying TRO even though "loss of a home may constitute irreparable harm as a matter of law" because "Plaintiffs' unexplained[,] long delay in seeking injunctive relief implies a lack of urgency").

This general principle applies to constitutional claims. Even where civil rights violations are asserted, courts will decline to find the harm necessary to justify preliminary relief where a litigant has unreasonably delayed in seeking this extraordinary remedy. *See, e.g.*, *Kohls v. Ellison*, 166 F.4th 728, 733 (8th Cir. 2026) (rejecting argument "that delay cannot preclude a finding of irreparable harm where First Amendment rights are involved" and affirming denial of preliminary injunction); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.* (*DSSA*), 108 F.4th 194, 205 (3d Cir. 2024) (affirming denial of preliminary injunction requested by plaintiffs four months after filing their complaint challenging assault weapons ban on Second Amendment because their "generalized claim of harm" was "hardly enough to call for this 'extraordinary and drastic remedy'"); *Bolbol v. Rowell Ranch Rodeo, Inc.*, 673 F. Supp. 3d 1099, 1101 (N.D. Cal. 2023) (plaintiffs who "sit on their rights only to spring an application for a temporary restraining order on their opponents at the eleventh hour" may not obtain emergency relief—"even if the rights the plaintiffs choose to sit on are constitutional in nature"); *UnifySCC*, 2022 WL 686310 ("Because Plaintiffs' request for a temporary restraining order is untimely, the Court need not reach the

merits of whether the [challenged conduct] violates the First Amendment[ or] Fourteenth Amendment.").[1]

These principles preclude finding that a TRO is necessary to avert irreparable harm here. The United States filed this lawsuit and sought emergency relief on the very day that AB 1127's sales prohibition became operative—over eight months after its enactment. *See supra* at 3–4. These many months of delay, for which the United States offers no explanation, show that this is not an "emergency situation[]" warranting a TRO. *Doe*, 2026 WL 1215631, at *2. Rather than offering any justification for its lengthy delay, the United States simply notes that it has alleged a constitutional violation, *see* TRO at 11, but as explained, even where constitutional claims are asserted, courts will decline to find the harm necessary to justify preliminary relief where a litigant has unreasonably delayed in seeking this extraordinary remedy, or otherwise failed to explain its necessity. *See, e.g.*, *Bolbol*, 673 F. Supp. at 1101; *Kohls*, 166 F.4th at 733; *DSSA*, 108 F.4th at 205.

Neither of the cases that the United States cites are to the contrary, as each involved plaintiffs who promptly sought preliminary relief. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 664 (9th Cir. 2025) (plaintiffs sought TRO enjoining arrest policies within one month of their official commencement and within weeks of harms suffered by putative class members); *Hernandez v. Sessions*, 872 F.3d 976, 986 (9th Cir. 2017) (plaintiffs sought PI within two months of named plaintiff's initial bond hearing). And both involved challenges to conduct resulting in the plaintiffs' arrest or detention. *Id.* In short, neither supports the United States's claim

---

[1] In *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019), the Ninth Circuit listed the constitutional nature of the alleged injury as one factor in excusing the plaintiff's delay in seeking preliminary relief. Other factors also played a role in the Court's decision to do so, including the plaintiff's *pro se* status and the fact that the plaintiff faced "ongoing, worsening injuries" during the delay. *Id.* Here, the United States itself has not suffered any constitutional injury, and neither of the additional factors cited in *Cuviello* is at work here. Further, an alleged constitutional injury—standing alone—is insufficient to excuse lengthy delays, as the cases discussed above hold.

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

that it has established the sort of irreparable harm warranting a TRO purely by alleging Second Amendment infringements it has been on notice of since October.

### B.  Due to This Delay, the TRO Is Equitably Barred by Laches.

Because the United States's eight-month delay is not only unreasonable but prejudicial, laches bars the requested TRO.

Laches bars equitable relief when a petitioner has inexcusably delayed in seeking relief, prejudicing the opposing party. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). It "rest[s] on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights.'" *Id.* (quotation omitted). Although laches is often invoked to wholly bar a plaintiff's tardy suit, it can be applied more modestly to bar only particular forms of relief, including late-breaking requests for preliminary relief. *See, e.g.*, *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 922 (D. Ariz. 2016); *Burrows*, 2012 WL 12882754, at *1. Laches applies where a defendant establishes "an unreasonable delay by the plaintiff and prejudice to itself." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012). Each element is met here.

### 1.  The United States's Eight-Month Delay Is Unreasonable.

The United States's delay is both unexplained and inexplicable. That the United States offers no explanation whatsoever for waiting eight months to seek a TRO alone supports a finding of unreasonableness. *See Arroyo Escondido, LLC v. Balmoral Farm, Inc.*, No. 2:19-cv-08464, 2023 WL 3564723, at *1 (C.D. Cal. Mar. 31, 2023) ("Plaintiff offers no reason for its months-long delay in seeking relief. Absent any reasonable explanation, the Court finds the delay unreasonable.").

Further, there is no reason the United States could not have sued when AB 1127 was enacted—many months before it became operative. Indeed, a set of plaintiffs *did* sue within days of the bill's enactment, and that suit proceeded without any requests for emergency relief and was ultimately voluntarily dismissed. *See supra* at 5. And firearm dealers in California—the entities directly impacted by

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

AB 1127—received direct notice of the semiautomatic pistol models that would be covered by AB 1127's sales prohibition on December 26, 2025. McGraw Decl., Ex. 1. Given that the United States and directly impacted parties have had notice of this prohibition for many months, the United States's decision not to sue until the prohibition became operative, and then rushing this Court for a TRO that same day, is unjustifiable.

### 2. The United States's Eight-Month Delay Is Prejudicial.

This delay unfairly prejudices California in its defense of AB 1127. Forcing the State to brief the issues in this case on a compressed TRO timeframe impairs its "ability to fully develop facts and arguments" in defense of AB 1127. *Ariz. Libertarian Party*, 189 F. Supp. 3d at 924. "Laches is designed to protect a defendant from this precise type of prejudice." *Id.*

Unnecessarily rushing the State to brief this case is especially harmful given the novelty and complexity of the legal issues raised by the United States's TRO application. *See Mintz v. Chiumento*, 724 F. Supp. 3d 40, 50 (N.D.N.Y. 2024) (noting particular harm in compelling State "to prepare for and contest litigation involving significant historical and constitutional issues in a short period of time"); *Bolbol*, 673 F. Supp. 3d at 1101 (plaintiff's failure to request TRO "in a timely and responsible fashion" was "especially problematic" where request was based on "weighty constitutional claims whose adjudication would benefit from deliberation and possibly an evidentiary hearing").

As explained below, the United States's strained invocation of 34 U.S.C. § 12601 is unconventional at best. *See infra* at 14–17. And the underlying Second Amendment claim is particularly ill-suited to compressed briefing and decision. While the United States has not plausibly alleged a facial Second Amendment violation under the relevant legal framework for the reasons outlined in Section III, a TRO is not an appropriate vehicle to permit Defendants a sufficient opportunity to respond to the allegation that "there is no historical tradition" supporting AB 1127.

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

Compl. ¶ 25; *see N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022) (when evaluating Second Amendment challenges, the government must demonstrate the challenged law is consistent with the Nation's historical tradition of firearm regulation if the Amendment's plain text covers the regulated conduct); *see also, e.g.*, *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) (en banc), *petition for cert. filed*, No. 25-198 (U.S. Aug. 15, 2025) (reviewing dozens of historical laws from around the Founding and after the Civil War to discern three historical regimes that established two historical traditions of regulation).

In short, because the United States has unreasonably delayed in seeking a TRO, resulting in unfair prejudice, laches bars emergency relief. *See Evergreen Safety*, 697 F.3d at 1226; *Ariz. Libertarian Party*, 189 F. Supp. 3d at 922.

### C.   Especially Given This Delay, the Equities Disfavor a TRO.

For essentially the same reasons that laches bars a TRO, the equitable balance disfavors this relief. As explained, the United States's delay overrides any presumption of irreparable harm, and at minimum negates any claim that a short-term TRO urgently is needed to avert any such harm. *See supra* at 8–13. The United States offers no explanation for this delay and no evidence of actual harm to any firearms dealers, firearms manufacturers, or individuals.

On the other side of the ledger, granting a TRO would harm California and undermine the public interest. It would not only enjoin enforcement of an important public safety "statute[] enacted by representatives of its people," itself a harm to the State and its constituents, *see Maryland v. King*, 567 U.S. 1301, 1303 (2013), but also do so without affording California adequate time to defend AB 1127, forcing hasty consideration of the complex issues raised by this lawsuit, including whether 34 U.S.C. § 12601 is a proper vehicle for this action (addressed *infra*, Argument Section II), and whether AB 1127 survives Second Amendment scrutiny, each of which warrants more time and analysis than that provided for in a rushed TRO.

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

Consequently, the balance of the equities overwhelmingly favors denying a TRO. There is no emergency warranting this extraordinary remedy, and an injunction would offend equity and disserve the public interest.

**II.   THE UNITED STATES HAS FAILED TO SHOW THAT ITS NOVEL USE OF A FEDERAL STATUTE FOCUSED ON POLICE MISCONDUCT CAN BE USED TO FACIALLY CHALLENGE A STATE LAW.**

The only claim asserted in the Complaint is brought under 34 U.S.C. § 12601 (Compl. ¶¶ 62–64), but the United States has not established that it is likely to succeed in utilizing this cause of action to challenge the constitutionality of a state law. Section 12601 authorizes the United States to seek equitable and declaratory relief against state and local governments to eliminate any such "pattern or practice of conduct by law enforcement officers … that deprives persons of [federal] rights." But the United States's allegations do not pertain to any pattern or practice, much less a pattern or practice that deprives anyone of federal rights. The United States's effort to use Section 12601 to challenge a state firearm regulation relies on an unprecedented interpretation of the statute that defies its plain language and historical purpose. The rushed nature of a TRO makes it an inappropriate posture to adjudicate the interpretation's viability.

Courts deny TROs where applicants cannot demonstrate a likelihood of success on the merits because their claims rely on "unprecedented and novel" legal theories. *See, e.g.*, *Sampson v. All Am. Home Assistance Servs., Inc.*, No. 1:13-CV-495-WSD, 2013 WL 12322089, at *10 (N.D. Ga. Mar. 7, 2013) (collecting cases). The United States's use of Section 12601 to challenge state and local firearm laws is novel and no court has approved such a use. The United States has filed at least seven such lawsuits within the past year, all of which are still in the opening stages of litigation.[2] In two of those cases, motions to dismiss are pending that challenge,

---

[2] See *United States v. District of Columbia*, No. 1:25-cv-04458-APM (D.D.C. filed Dec. 22, 2025); *United States v. Colorado*, No. 1:26-cv-01950-SKC-TPO (D. Colo. filed May 6, 2026); *United States v. Los Angeles Cnty. Sheriff's Dep't*, No. 2:25-cv-9323-SPG-ADS (C.D. Cal. filed Sept. 30, 2025); *United States* (continued…)

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

among other issues, the United States's use of Section 12601. McGraw Decl., Ex. 4 (Defs.' Mot. to Dismiss Pl.'s Am. Compl., *United States v. District of Columbia*, No. 1:25-cv-04458-APM (D.D.C. June 25, 2026), ECF No. 34); McGraw Decl., Ex. 5 (Mot. to Dismiss, *United States v. Colorado*, No. 1:26-cv-01950-SKC-TPO (D. Colo. June 30, 2026), ECF No. 30). Both motions persuasively demonstrate that the plain language, legislative history, and historical usage of Section 12601 do not support its use to challenge substantive state criminal and regulatory laws, and that the United States will not be able to succeed with its novel interpretation.

As the United States Department of Justice itself recognized in 2017, the purpose of the Section 12601 (originally numbered 42 U.S.C. § 14141) is to combat systemic police misconduct. *See* U.S. Dep't of Justice, Civil Rights Div., *The Civil Rights Division's Pattern and Practice Police Reform Work: 1994-Present*, at 3–4 (Jan. 2017), https://oag.ca.gov/sites/all/files/agweb/pdfs/ripa/crd-pattern.pdf. Historically, the United States Department of Justice Civil Rights Division utilized 12601 to open formal investigations of law enforcement agencies, including "comprehensive analysis of the policies and practices of policing in a particular community" or focusing on a "specific area of policing practice" to determine "whether the agency is engaged in a pattern or practice of violating federal law." *Id.* at 1. The specific rights the Department of Justice identified as protected by Section 12601 all pertain to police practices: "the rights to be free from excessive force; unreasonable stops and searches; arrests without warrants or sufficient cause, or in retaliation for exercising free speech rights; and discrimination based on factors such as race, ethnicity, national origin, religion, disability, and sex—including sexual orientation, gender identity and LGBT status." *Id.* at 3.

---

*v. Gov't of the Virgin Islands*, No. 3:25-cv-00050-ER-GAT (D.V.I. filed Dec. 16, 2025); *United States v. City & Cnty. of Denver*, No. 1:26-cv-01929-SKC-TPO (D. Colo. filed May 5, 2026); *United States v. Commonwealth of Virginia*, No. 3:26-cv-00610 (E.D. Va. filed July 1, 2026).

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

The United States makes little effort to explain how it can prevail on the merits of a Section 12601 complaint. It makes the conclusory assertion that Section 12601 applies because Defendant Rob Bonta is the "chief law enforcement officer of the State," and that the California Bureau of Firearms (BOF) is tasked with enforcing California's firearms laws. TRO at 8–9. But the gravamen of the United States's claim has nothing to do with the "pattern or practice" of any law enforcement agency, including BOF, except to the extent that their pattern or practice is to enforce California laws in general. Rather, the United States's claim is about the constitutionality of a California law itself. If Section 12601 authorized the United States to challenge state laws purely on the grounds that state law enforcement agencies enforce those laws, it would vastly expand the power of the United States to challenge any state criminal law, as well as many civil laws.

There is no caselaw supporting the use of Section 12601 to challenge the constitutionality of a law in this way. The only case the United States cites is *United States v. County of Maricopa, Arizona*, 889 F.3d 648, 652 (9th Cir. 2018). TRO at 8. But this case does not support invoking Section 12601 to enjoin a State from enforcing a duly enacted statute. Rather, in that case, the Ninth Circuit held that Maricopa County could be held liable under Section 12601 for "racially discriminatory policing policies instituted by" the County's sheriff. *Id.* at 649. The sheriff had led officers to "routinely target[] Latino drivers and passengers for pretextual traffic stops." *Id.* The County had argued that Section 12601 did not "permit[] a local government to be held liable for the actions of its policymakers." *Id.* at 650. The Ninth Circuit rejected that argument in a case that is a classic application of Section 12601 to racially discriminatory policing practices. The United States's broad reading of the case cannot be squared with its more limited holding.

At a minimum, the legal complexity of this novel use of section 12601, and the already-pending legal challenges to it, prevents the United States from showing

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

that it is likely to prevail on this new and novel theory of Section 12601. And as the District of Columbia and Colorado persuasively explain, the United States will not be able to succeed. A TRO is not the proper procedural vehicle to decide an important question regarding the novel use of a federal statute to challenge the constitutionality of duly enacted state laws. As other district courts consider this question, the United States has failed to show why this Court should decide the question on an expedited basis.

Accordingly, the TRO should be denied, and the parties should be afforded sufficient time to adequately brief the important issue of whether Section 12601 can be used to facially challenge the constitutionality of a duly enacted firearms-related statutes.

### III. EVEN IF THE UNITED STATES COULD MOUNT A FACIAL SECOND AMENDMENT CHALLENGE UNDER SECTION 12601, IT HAS NOT ESTABLISHED A SECOND AMENDMENT VIOLATION.

Even if the United States could plausibly rely on Section 12601 as a vehicle to mount a facial challenge to a State's duly enacted law, the United States cannot show that AB 1127 facially violates the Second Amendment.

To succeed in such a facial challenge, which is the "most difficult challenge to mount successfully," the United States "must prove that the statute violates the Second Amendment in all of its applications." *Knife Rights, Inc. v. Bonta*, 165 F.4th 1330, 1335 (9th Cir. 2026) (quoting and citing *United States v. Rahimi*, 602 U.S. 680, 693). When evaluating a Second Amendment challenge, the plaintiff must first establish that the "Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24; *Doe v. Bonta*, 101 F.4th 633, 639–40 (9th Cir. 2024). If the plaintiff meets that burden, then the burden shifts to the government defending the law to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

The United States argues that AB 1127 violates the Second Amendment because it regulates handguns, and the specific handgun models that are covered by

AB 1127 are in common use. *See* TRO at 4–5. But a plaintiff does not satisfy the threshold *Bruen* analysis with a simple tally of how many semiautomatic pistols that can readily be converted into machineguns under AB 1127 are sold or possessed—a number that merely reflects the fact that firearms manufacturers have chosen to not include design modifications that can prevent such conversion as "standard equipment." *Duncan*, 133 F.4th at 882–83 & n.12. In *Duncan*, an *en banc* panel of the Ninth Circuit rejected that "simplistic approach," reasoning that the prevalence of a design feature is not dispositive of whether it is constitutionally protected because "there is no constitutional right to factory settings." *Id.* at 882–83 & n.12. Were it otherwise, the constitutionality of a "state-law ban on machine guns [would] suddenly change from constitutional to unconstitutional" if more civilians purchased machineguns," but as *Duncan* explains, that is not how the Second Amendment works. *Id.* at 883. Similarly, if modifications that prevent semiautomatic pistols from being readily converted into machineguns become standard design features, would AB 1127 suddenly switch from purportedly unconstitutional to constitutional in the United States's eyes? This is not a farfetched possibility. Indeed, a manufacturer impacted by AB 1127 indicated in an unrelated court filing in March 2026 that it "has made extensive efforts to redesign GLOCK pistols to prevent the use of known MCDs [machinegun conversion devices]." McGraw Decl., Ex. 2 at 017. And, AB 1127 provides a pathway for such a manufacturer to make such a pistol model available for retail sale. *See* Cal. Penal Code § 32103.

Requiring that certain semiautomatic pistol models have design modifications to prevent their ready conversion into machineguns using a device that the U.S. ATF acknowledges is becoming increasingly accessible is not a "ban," TRO at 5, and any ancillary right to acquire firearms does not encompass a desire to purchase ones that can be easily modified into machineguns. *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017) (en banc) ("[T]he Second Amendment

does not elevate convenience and preference over all other considerations."). Properly analyzed, California's commercial requirement that semiautomatic pistol models available for retail sale in the State not fall within the definition of a "machinegun convertible pistol" does not "meaningfully impair[] an individual's ability to access firearms." *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024), *cert. denied*, No. 24-598 (U.S. Apr. 28, 2025)). Just as the Second Amendment's text "covers modern instruments that facilitate armed self-defense," *Duncan*, 133 F.4th at 866 (quoting *Bruen*, 597 U.S. at 28), the text does not preclude States from addressing the "regulatory challenges posed by firearms today" by requiring modern weapons to have modern safety features that reduce the risk of unintended harm. *Bruen*, 597 U.S. at 27. For these reasons, the United States has not met its burden at *Bruen*'s first step. Moreover, even after *Bruen*, the Ninth Circuit has reaffirmed prior precedent that machineguns are dangerous and unusual weapons that fall outside the scope of the Second Amendment because machineguns can "fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds." *United States v. Kittson*, 161 F.4th 619, 631 (9th Cir. 2025), *petition for cert. filed*, No. 25-7642 (U.S. June 18, 2026) (quoting *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012)); *see also Duncan*, 133 F.4th at 882–83 (noting that the Supreme Court observed it would be "startling" to read the Second Amendment as prohibiting a ban machineguns).

In any event, a step two *Bruen* analysis shows AB 1127 is consistent with the historical traditions of firearms regulation identified in the Ninth Circuit's historical analysis in *Duncan*. As *Duncan* recognized, "[m]ass shootings are clearly a societal concern that arose only in the 20th century," and that firearms that existed around the Founding and after the Civil War fired "much slower than the firing rate of a modern semi-automatic firearm," let alone compared to the rate of a machinegun. 133 F.4th at 873. A semiautomatic pistol that can be readily converted into a machinegun with a 3-D printed pistol converter is thus a "distinctively modern"

problem. *Wolford v. Lopez*, 609 U.S. __, 2026 WL 1825723 at *7 (U.S. June 25, 2026).

*Duncan* went on to explain that "[b]eginning before the Founding and continuing throughout our Nation's history, legislatures have enacted laws to protect innocent persons from especially dangerous uses of weapons once those perils have become clear." 133 F.4th at 874. These historical laws fell into three categories, including gunpowder storage laws, trap gun laws, and restrictions on particular weapons "after their use by criminals exposed an especially dangerous use of the weapon." *Id.* at 874–75. These sets of historical laws demonstrated a "clear pattern," that when "criminals took advantage of technological advances in weapons, legislatures acted to restrict an especially dangerous use of those weapons." *Id.* at 876.

This historical inquiry is consistent with the purpose behind AB 1127, which responds to the U.S. ATF's acknowledged skyrocketing criminal use of machinegun conversion devices on certain semiautomatic pistol models. At this early stage in the proceedings, the historical principles identified by the Ninth Circuit in *Duncan* at a minimum demonstrate that any historical inquiry cannot be resolved in the context of a TRO, and that more time is needed to compile the historical record for *Bruen*'s second step (to the extent that reaching this step is necessary in the first place).

The United States accordingly fails to establish that AB 1127 constitutes a facial violation of the Second Amendment.

## CONCLUSION

This Court should deny the United States's *ex parte* application for a temporary restraining order and set a reasonable schedule to govern future

///

///

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

proceedings, including on the United States's request for a preliminary injunction and Defendants' anticipated motion to dismiss the complaint based on Section 12601 not providing the United States with a cause of action.

Dated:  July 2, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General

*/S/ EDWARD P. WOLFE*

CHRISTINA MCCALL
SABRINA T. MCGRAW
EDWARD P. WOLFE
Deputy Attorneys General
*Attorneys for Defendants*

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants State of California and Attorney General Rob Bonta, certifies that this brief contains 6,739 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated:  July 2, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General

*/S/ EDWARD P. WOLFE*

CHRISTINA MCCALL
SABRINA T. MCGRAW
EDWARD P. WOLFE
Deputy Attorneys General
*Attorneys for Defendants*

Defs.' Opp'n to Pl.'s TRO Appl.
Case No. 8:26-cv-1697-AH-MBK

# CERTIFICATE OF SERVICE

Case Name: **United States of America v.**
**State of California, et al.**

No. **8:26-cv-1697 AH (MBKx)**

I hereby certify that on <u>July 2, 2026,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF 3)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 2, 2026</u>, at Los Angeles, California.

<table>
<tr><td align="center">J. Sissov</td><td align="center">*J. Sissov*</td></tr>
<tr><td align="center">Declarant</td><td align="center">Signature</td></tr>
</table>

SA2026303422