HARMEET K. DHILLON
Assistant Attorney General
JESUS A. OSETE
Principal Deputy Assistant Attorney General
   Civil Rights Division
   United States Department of Justice
   950 Pennsylvania Avenue, NW
   Washington, D.C.  20530
   Telephone: (202) 304-8447
   barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
*Additional counsel listed on following page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>   v.<br><br>STATE OF CALIFORNIA and ROBERT BONTA, in his official capacity as head of the California Department of Justice,<br><br>         Defendants. | Case No. 8:2026-cv-1697-AH-MBK<br><br>**REPLY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:      Not Set<br>Time:     Not Set<br>Courtroom:  Los Angeles Courtroom 9C<br>Judge:    Hon. Anne Hwang<br>Action Filed:  July 1, 2026 |

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON (TX No. 24129555)
Acting Chief, Second Amendment Section

PATRICK TODD (TX No. 24106513)
TRISTAN SILVA II (DC No. 90037513)
    Trial Attorneys
    Second Amendment Section
    United States Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, D.C.  20530
    Telephone: (202) 304-8447

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (Cal. Bar No. 272742)
Assistant United States Attorney
    United States Attorney's Office
    300 North Los Angeles Street, Suite 7516
    Los Angeles, California 90012
    Telephone: (213) 894-2464
    Julie.hamill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1

Plaintiff submits the following reply in support of its application for a temporary restraining order ("TRO"):

## I.   INTRODUCTION

Cal. Penal Code § 27595(a) (the "Glock Ban") is breathtakingly unconstitutional.  When a state flouts the Constitution in such an extraordinary manner, the "extraordinary remedy" of a TRO is warranted.

At 12:01 am on July 1, 2026, California law enforcement—and specifically the California Department of Justice's Division of Law Enforcement, Bureau of Firearms—implemented an unconstitutional pattern or practice of preventing the purchase of the most popular handgun in America.  The implementation of that pattern or practice is the basis for this cause of action pursuant to 34 U.S.C. § 12601.  Accordingly, the United States timely filed its application for a TRO that same day.

Defendants' constitutional analysis is deeply flawed.  Defendants' discussion of step one of *Bruen's* two-step Second Amendment test[1] entirely rests on a case that the Supreme Court has abrogated—*Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025).  Defendants cite *Duncan* for the proposition that under step one, a plaintiff is required to make a number of difficult empirical demonstrations to show that his conduct is covered by the "plain text" of the Second Amendment.  Opp. 18.  But, days ago, in *Wolford v. Lopez*, 2026 WL 1825723 (U.S. June 25, 2026), the

---

[1] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022).

Supreme Court abrogated *Duncan* when it stated that a plaintiff meets his plain-text burden simply by demonstrating that he desires to keep and bear "*any form of 'Arms*,'" i.e., any weapon customarily used for offensive or defensive purposes." *Id*. at *6 (emphasis added).  Importantly for purposes of this case, the Court held that handguns like those subject to the Glock Ban "fall squarely into this category." *Id*. at 4.  Accordingly, Defendants argue against the TRO by squarely disagreeing with binding Supreme Court precedent.

Defendants argue that they need to ban perfectly legal semiautomatic handguns because criminals might use conversion devices to convert them into machineguns.  But the conversion devices are already illegal under state and federal law.  Thus, it is also wholly unnecessary to ban all law-abiding citizens' purchase of legal semiautomatic firearms because criminals may break an existing law.  After all, an ordinary shotgun can be turned into an illegal saw-off shotgun in seconds with a common hacksaw.  Surely California does not believe it can ban shotguns.

Would Defendants likewise ban speech because it could be used for unlawful purposes?  The mere ability of criminals to put legal speech, religion, private property—or constitutionally protected firearms—toward an illegal end does not justify the wholesale recission of law-abiding citizens' constitutional rights.  Equity cannot allow Defendants to use an unlawful statute to deprive millions of citizens of their fundamental constitutional right to keep and bear the most popular handgun in the Nation.

Lastly, the Defendants' present a strawman argument that 34 U.S.C. § 12601 should cover only some unconstitutional misconduct, but not the Second Amendment rights that Defendants disfavor. This absurd argument belies the true motivation behind Defendants' unconstitutional conduct: they do not consider the Second Amendment worthy of protection. Congress' broad grant of authority under Section 12601's plain text includes protection of the rights protected by Second Amendment, and Plaintiff's past practice bolsters that broad application.

There is a noteworthy irony in Defendants' current position. In an interview during the last presidential campaign, Kamala Harris said, "I have a Glock and I've had it for quite some time."[2] The irony is that as of July 1, 2026, even the former Attorney General of the State of California cannot go to a gun store in the State to buy the very gun she boasted of owning and firing. Neither can any of the millions of ordinary Californians who desire to purchase that same gun. This situation is intolerable under the Second Amendment, and the Glock Ban should be enjoined immediately.

## II.    ARGUMENT

Defendants' opposition to the requested TRO fails to abate the need for an immediate equitable remedy of Defendants' ongoing violation of constitutional rights. The TRO must issue because: (a) the United States timely sought the TRO

---

[2] 60 Minutes, interview by Bill Whitaker (CBS, aired October 7, 2024) (available at https://www.youtube.com/shorts/aC6EK2in544).

4

as soon as the Glock Ban implemented a pattern or practice of law enforcement misconduct; (b) the United States satisfies the four TRO factors; and (c) the United States has authority to bring this action.

**A. The United States Timely Sought the TRO.**

Defendants' primary argument looks past their constitutional violation and attempts to distract with a manufactured delay argument.  There was no delay.  The United States's cause of action arose when—on July 1, 2026—the State's law enforcement officers implemented a pattern or practice of misconduct that violated federal statutory or constitutional rights.  34 U.S.C. § 12601.[3]  Had the United States filed its complaint and sought a TRO before the implementation of the Glock Ban, it would have faced precisely the opposite argument, i.e., that there was not yet a pattern or practice giving rise to the United States' cause of action.

When Congress enacted Section 12601 of the Violent Crime Control and Law Enforcement Act of 1994 it filled a gap in the United States' ability to vindicate the rights of Americans against a pattern or practice of law enforcement misconduct that arose following *United States v. City of Phila.*, 644 F.2d 187, 206 (3rd Cir.

---

[3] As set forth in Plaintiff's TRO application, the United States also has standing to vindicate its own sovereignty. *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-431 (1976).  But the United States brought this cause of action pursuant to its statutory authority under 34 U.S.C. § 12601.

1980).[4]  Thus, the United States' statutory basis for this cause of action arose only upon the implementation of a pattern or practice of law enforcement misconduct. 34 U.S.C. § 12061.[5]

Thus, Defendants became liable under Section 12061 on July 1 when California's legislative enactment mandating a practice of law enforcement misconduct became effective.  *See United States v. Cnty. of Maricopa, Arizona*, 889 F.3d 648, 653 (9th Cir. 2018) (holding Section 12601 "imposes liability on a governmental authority whose own official policy causes it to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of federally protected rights.").  Therefore, the United States brought this case the very day that Defendants implemented their unconstitutional pattern or practice of law enforcement that gave rise to this cause of action.

### B. Plaintiff Satisfies the Four TRO Factors

Under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7(2008), a plaintiff seeking a TRO must establish the four familiar *Winter* elements discussed in the

---

[4] Similarly, Congress enacted the Civil Rights for Institutionalized Persons Act, 42 U.S.C. § 1997, to ensure that the United States could vindicate the rights of Americans in institutional setting following the Ninth Circuit's holding in *United States v. Mattson*, 600 F.2d 1295 (1979).  Both enactments support Plaintiff's broad authority to obtain equitable remedies for any pattern or practice of constitutional violations.

[5] The United States was also required to have standing at the time of the filing of its complaint.  *Carney v. Adams*, 592 U.S. 53, 59–60 (2020).

Application.[6]  Given that likelihood of success on the merits "is the most important factor," *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020), one would have expected the State to lead its opposition with its merits argument. Instead, the State highlighted the weakness of its position by tagging a perfunctory merits discussion to the end of its brief.  This is not surprising given the overwhelming strength of Plaintiffs' Second Amendment claim.  As set forth below, Plaintiff has more than satisfied the *Winter* elements, and the United States respectfully urges the Court to issue the requested TRO.

**1.      The United States Is Likely to Prevail on the Merits**

The established facts and law overwhelmingly support Plaintiff's claim. Defendants readily admit their law enforcement misconduct that became effective July 1, 2026: "California Department of Justice, Bureau of Firearms provided an advisory to all licensed California firearm dealers containing a list of the semiautomatic pistol models that . . . could not be sold at retail beginning July 1, 2026."  Opp. 3.  This is an overt act by law enforcement that teed up the implementation of an unconstitutional restriction on citizens' Second Amendment

---

[6] Ninth Circuit courts also employ a "sliding scale" approach, also known as the "serious questions" test, in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

rights effective mere hours before the Plaintiff submitted the TRO application to halt the pattern or practice of misconduct.

Defendants argue that a TRO is not proper because the issues raised in this case are "complex," and "unprecedented," and "novel." Opp. 13, 14. Untrue. The fundamental right to keep and bear arms is well established law which implementation of the Glock Ban plainly violates. *Heller* held that handguns are the most popular weapon chosen by Americans for self-defense and cannot be banned. *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008). The Glock Ban bars the retail purchase of legal pistols utilizing the cruciform-trigger design. Originally developed by Glock, cruciform-trigger handguns make up a substantial percentage of semi-automatic handguns sold and owned in the United States. Second Declaration of Earl Griffith, ¶ 2. Glock, alone, has sold over 25 million pistols domestically, and, since the relevant patents expired around 2016, many other manufacturers have copied this exact design. *Id.* As a result, cruciform trigger pistols now represent one of the most common types of handguns in circulation today. *Id.* Indeed, Defendants' theory leads to a ban on *most semiautomatic firearms*, because "[t]he majority of semi-automatic pistols and rifles in the United States can be easily converted into machine guns with the addition of illegal conversion parts." Second Declaration of Earl Griffith, ¶ 3.

Normally, in a Second Amendment case, a court employs the two-step *Bruen* test. *See Bruen*, 597 U.S. at 24. That is not necessary in this case. *Heller* already

has addressed both steps with respect to Defendants' handgun ban. Handguns (indeed all firearms) are covered by the plain text, *id*., 554 U.S. at 581, and there are no historical laws analogous to a handgun ban. *Id*. at 629.[7]

Defendants' *Bruen* analysis, which relies heavily on abrogated case law, is seriously flawed. At step one, Defendants err when they rely on *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025), to argue that Plaintiff must jump through all sorts of difficult empirical-demonstration hoops to establish that the statute is covered by the plain text. Opp. 18. In their haste, Defendants seem to have overlooked the fact that the Supreme Court abrogated *Duncan* a few days ago in *Wolford v. Lopez*, 2026 WL 1825723 (U.S. June 25, 2026). There, the Court held that a law "clashes with the 'plain text' of the [Second] Amendment's language" if it regulates "*any form of 'Arms*,'" i.e., any weapon customarily used for offensive or defensive purposes." *Id*. at *6 (emphasis added). The Court held that handguns "fall squarely into this category." *Id*. at 4. Therefore, at step one, the Glock Ban is "presumptively unconstitutional." *See id*. at *6.

Defendants then suggest that their ban on the most popular handgun in America is consistent with the Nation's history and tradition of firearms regulation. Opp. 18-19. Here, too, Defendants' argument flies directly against *Heller's* plain

---

[7] *Bruen* did not establish a new "text and history" test. It specifically stated that it intended to "reiterate" *Heller's* text and history test. 597 U.S. at 24.

holding that "few laws in the history of our Nation have come close to the severe restriction" of a ban on handguns. *Id*. at 629.

Defendants try to rescue the Glock Ban by recasting it as a mere safety regulation. Opp. 19, citing *Bruen*, 597 U.S. at 27. The very page of *Bruen* that Defendants cite undermines their argument. There, *Bruen* discusses the fact that *Heller* precludes banning handguns. *Heller* held that the Constitution leaves states with "a variety of tools" for combatting handgun violence, "including some measures regulating handguns." *Id*. 554 U.S. at 636. But the Second Amendment "necessarily takes certain policy choices off the table." *Id*. This includes banning handguns. *Id*. Thus, a statute like the Glock Ban that operates to ban the most popular pistol in the country is clearly beyond the State's power to enact and its implementation constituted a pattern or practice of law enforcement misconduct.

**2.    The United States Meets the "Irreparable Harm" Factor.**

The implementation of the Glock Ban has already led to the irreparable harm of an admitted outright ban on the acquisition of constitutionally protected firearms. Opp. 3. Defendants suggest, however, that if there is a delay in enforcing rights (not that any such delay has occurred) then a person has not suffered an irreparable injury. Opp. 2. This is wrong. Numerous Ninth Circuit cases have held that the deprivation of constitutional rights "unquestionably" constitutes irreparable injury. *See, e.g., Vasquez Perdomo v. Noem*, 148 F.4th 656, 679 (9th Cir. 2025). It "follows inexorably" that if a government's policy is likely unconstitutional, a plaintiff has

also carried its burden as to irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Plaintiff is aware of no case that holds that a delay in enforcement of a constitutional right necessarily leads to the conclusion that the harm is not irreparable.

### 3. The United States Satisfies the Equity and Public Interest Factors

Finally, with respect to the merged equity and public interest factors, "by establishing a likelihood that [a state's] policy violates the U.S. Constitution, [a plaintiff] . . . also establishe[s] that both the public interest and the balance of the equities favor a preliminary injunction." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). After all, "it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law." *Id.* (citation and quotation marks omitted).

In their discussion of this TRO factor, Defendants claim that it is too late to require them to abide by the Constitution because the legislature enacted the Glock Ban eight months ago, even though it was not effective until July 1. Equity cannot countenance Defendants' argument. Let us go back to basics. "[A]n act of the legislature, repugnant to the constitution, is void." *Marbury v. Madison*, 5 U.S. 137, 177, 2 L. Ed. 60 (1803). The Glock Ban, "[a] law passed in violation of the Constitution, is null and void *ab initio*." *Mester Mfg. Co. v. I.N.S.*, 879 F.2d 561, 570 (9th Cir. 1989) (citation omitted). Accordingly, Defendants' pattern or practice

11

of enforcement of the constitutionally impermissible Glock Ban is against both the public interest and equity.

Nevertheless, Defendants insist that under the doctrine of laches, the Court should allow them to continue to enforce the unconstitutional statute. But, as the Pennsylvania Supreme Court explained in *Sprague v. Casey*, 520 Pa. 38, 47, 550 A.2d 184, 188 (1988), "laches and prejudice can never be permitted to amend the Constitution." If the law were otherwise, Defendants would be allowed to enforce this profoundly unconstitutional statute in the years it takes this case to get to trial.

Moreover, Defendants cannot meet the difficult burden of laches in any event. To meet that burden Defendants must show that, "(1) there was inexcusable delay in the assertion of a known right and (2) the party asserting laches has been prejudiced." *Barona Group of the Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc.*, 840 F.2d 1394, 1407 (9th Cir. 1988). As discussed above, there was no delay in the Plaintiff's filing of the Complaint and TRO application on the same day the Defendants implemented their unconstitutional pattern or practice. Prejudice would typically require that Defendants no longer have witnesses or evidence available to them as a result of the passage of time, or that Defendants altered their position in reliance on Plaintiff's inaction. *Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1412 (9th Cir. 1993). Defendants have not even attempted such a showing. "'The prejudice requirement does not mean merely that the defendant will be worse off if the relief

12

is granted than he would be if it were not; that sort of prejudice could be claimed by all defendants all of the time.'" *Id.* (quoting *Transworld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 696 (9th Cir. 1990)). Accordingly, Defendants equitable laches defense to their unconstitutional conduct is without support.

## C. The United States Has Authority to Bring this Action

Defendants suggest that 34 U.S.C. § 12601 may not authorize the United States to bring this action. Defendants cite no authority to back up that claim. Opp. 17. Indeed, the authority that they do cite supports the proposition that the United States seeks relief under the statute in a wide variety of constitutional contexts. Opp. 15 (discussing the many types of constitutional claims the United States has brought under the statute). Contrary to Defendants' argument, Congress' broad grant of authority to the United States Department of Justice under Section 12601's plain text includes protection of Second Amendment rights. Indeed, past administrations have exercised their prosecutorial discretion to use Section 12601 to investigate and bring enforcement actions to remedy:  enforcement of local ordinances that are facially unconstitutional; First, Fourth, Sixth, Eighth, and Fourteenth Amendment violations, Title VI violations, and to challenge the conduct of law enforcement exercised through court clerks, prosecutors, non-sworn staff, and sworn officers and deputies. But even if that were not the case, past agency practice cannot confine the United States' authority under Section 12601. *United*

13

*States v. Am. Union Transp.*, 327 U.S. 437, 454 n.18 (1946).  *See also Fed. Trade Comm'n v. Bunte Bros.*, 312 U.S. 349, 352 (1941) ("Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise."); *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 590 (1957) (holding that the mere failure of an administrative agency to act is in no sense "a binding administrative interpretation" that the government lacks the authority to act). Accordingly, Defendants present no legal basis for their desire to limit the United States' protection of civil rights through enforcement of 34 U.S.C. § 12601.

"Section 12601 provides a civil cause of action to the United States Attorney General when a local government's agents 'engage in a pattern or practice of conduct . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States'" . . .." *United States v. Town of Colorado City*, 935 F.3d 804. 811 (9th Cir. 2019).  Indeed, Section 12601 "*goes even further than Section 1983*," making it unlawful for "any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority" to engage in the prohibited conduct.  *Cnty. of Maricopa, Arizona*, 889 F.3d at 653 (emphasis added).  The plain text of the statute is extraordinarily broad and applies to all patterns or practices of law enforcement unconstitutional conduct.

There are three elements to the claim under the statute: (1) a governmental authority (2) engaged in a pattern or practice of conduct by law enforcement officers; (3) that operates to deprive persons of federal rights.  California is a

14

governmental authority.    The law enforcement officers of the California Department of Justice who enforce the Glock Ban are, as of July 1, engaging in a pattern or practice of conduct.    And, as set forth above, that conduct deprives citizens of their rights under the Second Amendments.

Defendants do not contest elements one or three.  They make a half-hearted attempt to suggest that its law enforcement officers are not enforcing the statute. But this argument is belied by the Attorney General of California himself.  On June 24, 2026, United States Assistant Attorney General Harmeet K. Dhillon urged California Attorney General Bonta not to enforce the Glock Ban.  Exhibit A.  In his June 30, 2026, response, General Bonta told AAG Dhillon to pound sand, that his office intends to enforce and defend the statute "vigorously."  Exhibit B.  General Bonta's letter leaves absolutely no doubt that his law enforcement officers are vigorously enforcing the Glock Ban.[8]  Accordingly, Defendants make clear their constitutional violation, and the United States has the authority to protect *all* federal constitutional rights pursuant to 34 U.S.C. § 12601—even if Defendants do not find Second Amendment rights worthy of protection.

---

[8] Even if General Bonta had not confirmed enforcement with his letter, enforcement would have been presumed.  *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (enforcement of newly enacted statute is presumed if state does not disclaim enforcement).

15

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to grant its Application for a temporary restraining order.

Respectfully submitted this 5th day of July 2026.

> /s/ Barry K. Arrington
> Barry Arrington
> Acting Chief
> Second Amendment Section

16