UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

Present: The Honorable    MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE

| Priscilla Deason for Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

Proceedings:    **(IN CHAMBERS) ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [3]**

Before the Court is Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. ECF 3. Plaintiff seeks to enjoin Defendants from enforcing California Penal Code § 27595(a). ECF 3-1 at 13. For the reasons stated herein, the Court **DENIES** the Application.

## I.    BACKGROUND

This action arises out of the enactment and implementation of California Assembly Bill 1127 ("AB 1127"). Codified as California Penal Code § 27595(a), AB 1127 provides that "commencing on July 1, 2026, a firearms dealer licensed pursuant to Sections 26700 to 26920, shall not sell, offer for sale, exchange, give, transfer, or deliver any semiautomatic machinegun-convertible pistol, as defined in Section 16885." Cal. Penal Code § 27595(a). California law defines a "machinegun-convertible pistol" as:

> [A]ny semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or with common household tools, as defined in Section 4082 of Title 11 of the California Code of Regulations, into a machinegun by the installation or attachment of a pistol converter as a replacement for the slide's backplate without any additional engineering, machining, or modification of the pistol's trigger mechanism.

Cal. Penal Code § 16885(a).

The United States ("Plaintiff" or the "United States") refers to California Penal Code § 27595(a) as the "Glock Ban" because it purportedly prohibits the sale of Glock and Glock-style pistols. ECF 1 ¶¶ 4, 20. Cruciform trigger bars have been integral to Glock's design since 1986

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

and are included in all factory-stock models of Glock pistols. *Id.* ¶¶ 26, 27. Glock-style pistols are modeled after the patented Glock design and also have a cruciform trigger bar. *Id.* ¶ 28. AB 1127 thus restricts the sale of Glock and Glock-style pistols because those pistols have cruciform trigger bars and may be deemed readily convertible semiautomatic pistols. *Id.* ¶ 29.

The United States alleges that AB 1127 is unconstitutional because "handguns are in common use and cannot be banned." *Id.* ¶ 30 (citing *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008)). Glock and Glock-style handguns are the most popular handgun in America. *Id.* ¶¶ 25, 32. As of 2020, Glock held 65% of the United States handgun market. *Id.* ¶ 33. In 2021, Glock allegedly manufactured 514,838 handguns for sale in the United States. *Id.* ¶ 37. The United States argues that Glocks are therefore "unquestionably in common use for lawful purposes." *Id.* ¶ 32.

The relevant federal statute that the United States invokes to bring this suit is 34 U.S.C. § 12601 ("Section 12601"), which provides as follows:

It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

34 U.S.C. § 12601(a). According to the United States, Section 12601 allows the federal government to bring this suit because the State of California and the California Department of Justice (the "Department") are governmental authorities. ECF 1 ¶¶ 56-57; *see also id.* ¶ 52 (the California Attorney General is the head of the Department and the chief law enforcement officer of the State); *id.* ¶ 53 (the Attorney General and the Department's special agents and investigators are defined as peace officers under California law); *id.* ¶ 54 (the California Bureau of Firearms sits within the Department's Division of Law Enforcement and its agents are tasked with enforcing California's firearm laws, including AB 1127). Moreover, the United States argues that by enforcing AB 1127, California law enforcement officers are engaging in a pattern or practice of conduct that violates the Second Amendment of the U.S. Constitution. *Id.* ¶¶ 58-59. Resultantly, the United States maintains it has the authority to seek equitable relief to stop the enforcement of AB 1127 pursuant to Section 12601(b). *Id.* ¶¶ 60-61; *see also* 34 U.S.C. § 12601(b) ("Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.").

On June 24, 2026, Assistant Attorney General Harmeet K. Dhillon, with the U.S. Department of Justice, sent a letter to California Governor Gavin Newsom and California Attorney General Robert Bonta, providing notice of the federal government's intent to file this action. ECF 19-1, Declaration of Sabrina T. McGraw ¶ 4, Ex. 3. In the letter, the U.S. Department of Justice extended an offer to defer the lawsuit if the State of California would be willing to enter pre-suit negotiations to resolve the matter, which would require that the State, at minimum, "(1) immediately cease enforcement of [California Penal Code § 27595(a) and the Unsafe Handgun Act]; (2) acknowledge the unconstitutionality of these laws; and (3) agree to enter into a court-enforceable consent decree permanently enjoining the State from violating its citizens' constitutional rights through these or any similar laws." *Id.* On July 30, 2026, Attorney General Bonta replied to the letter, stating that the California Department of Justice would not agree to the proposed conditions because the laws at issue "are commonsense handgun design safety laws that help to prevent accidental discharges . . . and the conversion of semiautomatic pistols into deadly automatic firing weapons." ECF 3-2, Declaration of Tristan Silva II ¶ 6, Ex. A.

On July 1, 2026, the United States proceeded to file this action against the State of California and Attorney General Bonta in his official capacity (collectively, "Defendants" or "California"). ECF 1. The United States asserts a single claim for violation of 34 U.S.C. § 12601(a), *id.* ¶¶ 62-64, and argues that AB 1127 violates the Second Amendment because (1) the law is presumptively unconstitutional since it deprives California citizens of the right to acquire certain handguns; and (2) California cannot overcome the presumption of unconstitutionality given "[t]here is no historical tradition analogous to a ban of a weapon in common use," *id.* ¶¶ 23-25. The United States seeks declaratory judgment and permanent injunctive relief. *Id.* at 16-17.

Also on July 1, 2026, the United States filed the instant *Ex Parte* Application for Temporary Restraining Order ("TRO Application"). ECF 3. The TRO Application seeks an emergency order prohibiting California from enforcing AB 1127.[1] *Id.* at 3. On July 2, 2026,

---

[1] Even though the Complaint alleges that California's Unsafe Handgun Act is also unconstitutional, ECF 1 ¶¶ 41-51, the TRO Application seeks emergency relief only with respect to AB 1127, so the Court does not address the Unsafe Handgun Act in this Order. *See also Boland v. Bonta*, 662 F. Supp. 3d 1077 (C.D. Cal. 2023), *appeal docketed*, No. 23-55805 (9th Cir. March 27, 2023) (reviewing on appeal the same argument that provisions of California's Unsafe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

California filed an Opposition to the TRO Application arguing that the United States unjustifiably delayed its TRO Application and is unable to establish a likelihood of success on the merits given its novel and unprecedented use of Section 12601. ECF 19. On July 5, 2026, the United Staes filed a Reply in support of its TRO Application. ECF 20.

## II.    LEGAL STANDARD

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

## III.    DISCUSSION

### A.    Timeliness

California argues that the TRO Application should be denied because the United States unjustifiably delayed its request for a TRO until eight months after AB 1127 was signed into law, thus "negat[ing] any claim that an emergency TRO is necessary to avert irreparable harm." ECF 19 at 16. The Court disagrees. As both parties acknowledge, AB 1127 went into effect on July 1, 2026, the same day the TRO Application was filed. California offers no support for its argument that the United States was required to act when AB 1127 was enacted instead of waiting to file suit once the law went into effect. Therefore, the United States did not unreasonably delay the filing of this Application and California's laches argument consequently fails.

---

Handgun Act are unconstitutional under the Second Amendment of the U.S. Constitution).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

B.    **Likelihood of Success on the Merits**

The United States asserts a novel theory under Section 12601 that California is a governmental authority whose law enforcement officers are engaging in a pattern or practice of depriving individuals of their Second Amendment rights by enforcing AB 1127.  *See* ECF 3-1 at 9-10; ECF 20 at 14-16.  As an initial matter, California argues that it is inappropriate at this stage to adjudicate the United States' "unprecedented interpretation of the statute that defies its plain language and historical purpose" because of the "rushed nature of a TRO," which fails to allow for proper briefing and argument of "[s]uch an important issue."  ECF 19 at 10, 22.  While there are several actions based on the novel use of Section 12601 pending throughout the nation, no court has determined whether the United States is authorized by the statute to facially challenge a state firearms law.  *See id.* at 10, 22 n.2 (citing *United States v. District of Columbia*, No. 1:25-cv-04458-APM (D.D.C. filed Dec. 22, 2025); *United States v. Colorado*, No. 1:26-cv-01950-SKC-TPO (D. Colo. filed May 6, 2026); *United States v. City & Cnty. of Denver*, No. 1:26-cv-01929-SKC-TPO (D. Colo. filed May 5, 2026); *United States v. Commonwealth of Virginia*, No. 3:26-cv-00610 (E.D. Va. filed July 1, 2026)).

The parties substantively dispute whether the United States may use Section 12601 as a vehicle to create a viable claim challenging a state law.  California identifies the historic purpose and usage of Section 12601 to combat systemic police misconduct by formally investigating law enforcement agencies to determine whether the agencies engage in a pattern or practice of violating federal law.  ECF 19 at 23.  California argues that the United States' claim is premised solely on the unconstitutionality of AB 1127 and fails to identify an unlawful pattern or practice of any California law enforcement agency, "except to the extent that their pattern or practice is to enforce California laws in general."  *Id.* at 24.  The United States argues that "Congress' broad grant of authority to the United States Department of Justice under Section 12601's plain text includes protection of Second Amendment rights."  ECF 20 at 14.  The United States claims, without citing to any authority or evidence, that past administrations have exercised their prosecutorial discretion pursuant to Section 12601 to target "enforcement of local ordinances that are facially unconstitutional; First, Fourth, Sixth, Eighth, and Fourteenth Amendment violations[;] Title VI violations; and to challenge the conduct of law enforcement exercised through court clerks, prosecutors, non-sworn staff, and sworn officers and deputies."  *Id.*

Based on the limited record before the Court, it is apparent that the use of Section 12601 to facially challenge a state criminal law is, at the very least, a novel approach that deviates from the way the statute has historically been enforced.  Section 12601, originally codified as 42 U.S.C. § 14141, was enacted as part of the Violent Crime Control and Law Enforcement Act of 1994 in response to the beating of Rodney King by Los Angeles police officers.  *See* U.S. Dep't

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

of Justice, Civil Rights Div., *The Civil Rights Division's Pattern and Practice Police Reform Work: 1994-Present*, at 3 (Jan. 2017), https://oag.ca.gov/sites/all/files/agweb/pdfs/ripa/crd-pattern.pdf. This law has historically been used to enforce "the rights to be free from excessive force; unreasonable stops and searches; arrests without warrants or sufficient cause, or in retaliation for exercising free speech rights; and discrimination based on factors such as race, ethnicity, national origin, religion, disability, and sex—including sexual orientation, gender identity, and LGBT status." *Id.* Neither party identifies a previous instance in which the United States brought a Section 12601 claim for a violation of the Second Amendment, and the Court cannot find one. Nor is there any historical precedent for utilizing Section 12601 to argue that law enforcement officers engaged in a pattern or practice of unlawful conduct by enforcing a state firearms law. Thus, it is unclear whether Section 12601 grants the United States the authority to challenge AB 1127 because AB 1127 is not a law enforcement policy but rather a law passed by the California legislature that proscribes private conduct.

"A court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact' in deciding whether to grant a TRO." *Suburban Propane LP v. Charette*, No. EDCV 26-01148-KK-DTBX, 2026 WL 923465, at *3 (C.D. Cal. Mar. 30, 2026) (quoting *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)). While there may be merit to the United States' claim that AB 1127 unlawfully restricts California constituents' access to Glock and Glock-type pistols, the novel approach the United States employs to stake its claim is not obviously sound. To determine this novel issue, the Court will need to carefully interpret the statute and examine its plain language, legislative history, and historical usage, which it cannot achieve here due to the accelerated nature of a TRO. Accordingly, the Court declines to grant the TRO given the uncertain viability of the United States' claim pursuant to Section 12601. *See Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (affirming the district court's denial of a preliminary injunction where the case centered on a "doubtful and difficult question"); *see also Confederated Tribes & Bands of the Yakama Nation v. Holder*, No. CV-11-3028-RMP, 2012 WL 893913, at *2 (E.D. Wash. Mar. 15, 2012) (finding that "the legal landscape [was] not sufficiently clear for the Court to say that an injunction is 'clearly warranted.'"); *Sampson v. All Am. Home Assistance Servs., Inc.*, No. 1:13-CV-495-WSD, 2013 WL 12322089, at *10 (N.D. Ga. Mar. 7, 2013) (concluding that plaintiffs did not show a substantial likelihood of success on the merits of their claim especially considering plaintiffs "rel[ied] on an unprecedented and novel interpretation" of the law); *E. Shoshone Tribe v. N. Arapaho Tribe*, 926 F. Supp. 1024, 1032 (D. Wyo. 1996) (declining application for a TRO and finding no substantial likelihood that plaintiff would prevail on the merits because plaintiff relied on a "novel, untested" theory and failed to "provide any assurance of eventually prevailing on the merits"); *Steede v. Freight Logic, Inc.*, No. 25-2136-DDC-TJJ, 2025 WL 1360733, at *10 (D. Kan. May 9, 2025) (determining that the court "simply can't grant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

extraordinary injunctive relief on an untested theory of conversion under Kansas law"). The United States does not identify any other basis for bringing this suit, despite asserting that it "also has standing to vindicate its own sovereignty." ECF 20 at 6 n.3 (citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-431 (1976)). The cases cited by the United States are inapposite because they involved other federal statutes granting the United States the authority to bring civil suits pursuant to other federal laws not at issue in this case.

### C.    Irreparable Harm

If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). In other words, even if the United States could establish a risk of immediate and irreparable harm, "the existence of irreparable harm alone is insufficient to warrant the issuance of a preliminary injunction." *Nitro NRG Corp. v. Liquid Nitro Beverages, Inc.*, No. EDCV162315JGBDTBX, 2017 WL 2964802, at *7 (C.D. Cal. Jan. 17, 2017).

Nevertheless, even if the United States had satisfied the first *Winter* factor, the Court is not persuaded that the United States would suffer irreparable harm in the absence of a TRO. The United States argues that the "deprivation of constitutional rights 'unquestionably' constitutes irreparable injury." ECF 3-1 at 11 (citing *Vasquez Perdomo v. Noem*, 148 F.4th 656, 679 (9th Cir. 2025)). The Court does not deny the significance of the alleged constitutional injury but finds that the United States has failed to show that irreparable harm will occur through the enforcement of AB 1127.

AB 1127 does not prohibit the *possession* of semiautomatic machinegun-convertible pistols; it bans firearms dealers from selling the pistols. *See* Cal. Penal Code § 27595(a). There are several exceptions to the law that allow for the continued acquisition of these pistols. For example, firearms dealers are permitted to sell remaining inventory of the convertible pistols received prior to January 1, 2026, *id.* § 27595(c)(1), and private individuals may acquire convertible pistols from private parties through a licensed firearms dealer, *id.* § 27595(c)(3). The law also includes carveouts for the transfer of machinegun-convertible pistols under various circumstances. *Id.* § 27595(c)(4), (6)-(8) (permitting the transfer of machinegun-convertible pistols to a gunsmith for service or repair, to a private party after temporary safekeeping storage or after a period of temporary prohibition, and to a forensic laboratory employee within the scope and course of employment).

Given the exceptions established in AB 1127, it is not clear that California citizens are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 8:26-cv-01697-MRA-ADSx | Date | July 9, 2026 |
|---|---|---|---|
| Title | *United States of America v. State of California et al.* | | |

prohibited outright from acquiring Glock and Glock-style pistols.  The United States therefore fails to make a "clear showing" that it is entitled to the "extraordinary remedy" it seeks in the TRO Application.  *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

#### D.   Remaining *Winter* Factors

The last two *Winter* factors merge when the government is a party.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  The United States argues that the balance of equities weighs in its favor because it is in the public interest to uphold the Constitution.  ECF 3-1 at 11 (citing *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (stating that "it is always in the public interest to prevent the violation of a party's constitutional rights")).  Conversely, California argues that its constituents would be harmed if the Court were to enjoin enforcement of "an important public safety 'statute[] enacted by representatives of its people.'"  ECF 19 at 21 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2013)).  California insists that granting the TRO would force "hasty consideration of the complex issued raised by this lawsuit, including whether 34 U.S.C. § 12601 is a proper vehicle for this action . . . , and whether AB 1127 survives Second Amendment scrutiny, each of which warrants more time and analysis than that provided for in a rushed TRO."  *Id.*  As explained above, the Court agrees with California on this point.  Accordingly, the Court holds that on balance, the equities weigh in favor of denying the TRO Application.

### IV.   CONCLUSION

For the foregoing reasons, the TRO Application [3] is **DENIED**.  The United States may renew its request through a regularly noticed motion for a preliminary injunction.

**IT IS SO ORDERED.**

-   :   -

Initials of Deputy Clerk        Pd/mku