HARMEET K. DHILLON
Assistant Attorney General

Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447
barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA and ROBERT BONTA, in his official capacity as head of the California Department of Justice,<br><br>Defendants. | Case No. 8:2026-cv-1697-MRA-ADS<br><br>**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Hearing: September 11, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 9B<br><br>Hon. Mónica Ramírez Almadani<br>United States District Judge |

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON (TX No. 24129555)
Acting Chief, Second Amendment Section

PATRICK TODD (TX No. 24106513)
TRISTAN SILVA II (DC No. 90037513)
Trial Attorneys
Second Amendment Section
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (Cal. Bar No. 272742)
Assistant United States Attorney
United States Attorney's Office
300 North Los Angeles Street, Suite 7516
Los Angeles, California 90012
Telephone: (213) 894-2464
Julie.hamill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................ 3

I. Defendants' Procedural Error Bars Granting Their Motion. ............. 3

II. Plaintiff Has Plausibly Pled a Section 12601 Claim. ......................... 5

A. *Berk* Confirmed That Defendants Face a Daunting Task to Prevail on a Motion to Dismiss. ............................................... 5

B. A Section 12601 Claim's Three Elements. .............................. 5

C. The United States Has Plausibly Pled All Three Elements of a Section 12610 Claim. ........................................................... 6

III. Section 12601's Plain Text Authorizes the Relief That Plaintiff Seeks. ......................................................................................... 8

A. The "Cardinal Canon" of Statutory Interpretation. ................... 8

B. The Plain Text Authorizes Plaintiff's Action. .......................... 8

IV. Statutory Interpretation Leads to the Same Conclusion as the Plain Text Analysis. ........................................................................ 11

A. The Legislative History of the 1991 Bill Supports Plaintiff's Claim. ................................................................................. 11

B. Section 12601 Overturned *City of Philadelphia*. ................... 12

C. Section 12601 and Section 1983 Should Be Interpreted *In Pari Materia*. ............................................................................ 12

V. Arguments That Section 12601 Does Not Apply Are Meritless ...... 14

A. No Authority Supports Defendants' Interpretation of Section 12601. ................................................................................. 14

B. Enforcement of an Unconstitutional Law Incurs Section 12601 Liability. ............................................................................ 14

C. The Department's Past Practice Does Not Cabin the Scope of the Statute. ........................................................................ 16

D. What Members of Congress Subjectively Intended Is Not Relevant to the Statute's Scope. ............................................ 19

E. Legislative History Is Not the Law ....................................... 19

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ........ 8, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 5

*Berk v. Choy*, 607 U.S. 187 (2026) ........ 4, 5

*Branch v. Smith*, 538 U.S. 254 (2003) ........ 13

*Charboneau v. Davis*, 87 F.4th 443(9th Cir. 2023) ........ 11

*City of Los Angeles v. Preferred Commc'ns, Inc.*, 476 U.S. 488 (1986) ........ 4, 5

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992) ........ 8

*D.C. v. Heller*, 554 U.S. 570 (2008) ........ 15

*Fed. Trade Comm'n v. Bunte Bros.*, 312 U.S. 349 (1941) ........ 18

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ........ 8

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd*, 146 S. Ct. 1546 (2026) ........ 20

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ........ 7

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ........ 18, 19

*Mayle v. State of Illinois*, 956 F.3d 966 (7th Cir. 2020) ........ 16

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ........ 15

*Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45 (D.C. Cir. 2024) ........ 20

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ........ 2, 14

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ........ 19

*Plaskett v. Wormuth*, 18 F.4th 1072 (9th Cir. 2021) ........ 4

*Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040 (9th Cir. 2025) ........ 4

*U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004) ............ 20

*United States v. Am. Union Transp.*, 327 U.S. 437 (1946).................................. 18

*United States v. City of Columbus, Ohio*, 2000 WL 1133166 (S.D. Ohio Aug. 3, 2000) ........................................... 11, 12

United States v. City of Philadelphia, 644 F.2d 187 (3d Cir. 1980)..................... 12

*United States v. Cnty. of Maricopa*, 889 F.3d 648 (9th Cir. 2018) ..... 1, 2, 3, 12, 14

*United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586 (1957).............. 18

*United States v. Jordan*, 509 F.3d 191 (4th Cir. 2007)....................................... 10

*United States v. Maricopa County*, 915 F. Supp. 2d 1073 (D. Ariz. 2013).......... 17

*United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019) ............................................... 1, 2, 3, 9, 14, 17, 20

*Valenzuela v. City of Anaheim*, 6 F.4th 1098 (9th Cir. 2021).............................. 13

*W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991) ............................... 8

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)................................................ 13

Whole Women's Health v. Jackson, 595 U.S. 30 (2021) ..................................... 16

*Wolford v. Lopez,* 146 S. Ct. 2032 (2026) ........................................................ 6, 7

## STATUTES

34 U.S.C. § 12601 ........................................................................................... 1, 5

42 U.S.C. § 1983 .................................................................................................. 3

## STATE STATUTES

Cal. Penal Code § 27595(a) .................................................................................. 1

Cal. Penal Code § 32015 ........................................................................................ 1

## INTRODUCTION

Defendants' motion to dismiss the Complaint [ECF 29] does not argue that the Glock Ban[1] and the Roster[2] are constitutional or that their enforcement is *not* law enforcement misconduct. Rather, they argue that even if the statutes are unconstitutional, the United States is powerless to do anything about it. Such an argument is precluded by not one but two Ninth Circuit cases. *See United States v. Cnty. of Maricopa*, 889 F.3d 648 (9th Cir. 2018), and *United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019).

Defendants use a strawman characterization of Plaintiff's claims: they argue that 34 U.S.C. § 12601 (Section 12601) does not authorize facial challenges to statutes and that the Complaint alleges the Glock Ban and the Roster are "facially invalid." Memorandum in Support of Motion to Dismiss Complaint (Def. Memo), 1.[3] Not so. Plaintiff has not brought a facial challenge to the statutes.[4] Rather, the Complaint alleges that the State's law enforcement officers violated Section 12601 when they engaged in a pattern or practice of conduct that deprived citizens of California of their constitutional rights when they *enforced* those unconstitutional statutes. Compl. ¶ 63.

The Court must decide whether Section 12601 authorizes the United States to seek injunctive relief when law enforcement officers have enforced an unconstitutional official policy. In both *Maricopa County* and *Colorado City*, the Ninth Circuit held that it does. In *Maricopa County*, the court held that Section

---

[1] Cal. Penal Code § 27595(a) (Glock Ban).

[2] Cal. Penal Code § 32015 (Roster).

[3] The Court may have been led astray by Defendants' misrepresentation of Plaintiff's complaint. Order [ECF 26], 5 (referring to "facial" challenge). This is understandable. As the Court recognized at the time, due to the "accelerated nature" of the TRO, it did not have an opportunity to "carefully interpret the statute and examine its plain language" and the United States' claims. *Id*. at 6.

[4] The word "facial" does not appear in the Complaint.

12601 authorizes the United States to seek an injunction against "a governmental authority whose *own official policy* causes it to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of federally protected rights." *Id*. at 653 (citation and quotation marks omitted; emphasis added). The statutes are obviously California's official policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (act of a "[legislative] body unquestionably constitutes an act of official government policy"). The *Colorado City* Court made clear that Section 12601 authorizes the United States to seek relief when law enforcement officers "violate constitutional rights—whether or not *those violations arose from an official policy*." *Id*. at 810 (emphasis added).

When California law enforcement officers enforce unconstitutional statutes, they violate the constitutional rights of the citizens against whom the statutes are enforced. In such a case, the United States is authorized to seek relief under Section 12601. Accordingly, the United States has not brought a facial challenge to any statute. Rather, it has brought a challenge to law enforcement officers' enforcement of California's official policies reflected in two unconstitutional statutes. *Maricopa County* and *Colorado City* hold that Section 12601 authorizes the United States to bring such a challenge.

In its July 9, 2026, Order, the Court noted that it could find no previous instance in which Section 12601 was used to address a violation of the Second Amendment. Order [ECF 26], 6. That is no longer the case. Indeed, the Court need not go far to find such an instance because the United States recently entered into a consent decree agreement in a Section 12601 case asserting law enforcement violations of the Second Amendment in this very Court. *See* Consent Decree Settlement Agreement in *United States v. Los Angeles County Sheriff's Department*, Case No. 2:2025-cv-09323-SPG-ADS, United States District Court for the Central District of California [ECF 36].

The State errs almost immediately when it denies Section 12601's similarities to 42 U.S.C. § 1983 (Section 1983). Def. Memo. 1. That argument fails under *Maricopa County* and *Colorado City*, both of which interpreted Section 12601 in light of the "important similarities" between Section 1983 and Section 12601, including their similar remedial purpose and scope. *Maricopa County,* 889 F.3d at 653; *Colorado City,* 935 F.3d at 810. Indeed, *Maricopa County* noted that not only are the statutes similar, but Section 12601 "goes even further than §1983." *Id*. As discussed below, the two statutes must be interpreted *in pari materia*. In other words, contrary to Defendants' assertions, the Ninth Circuit has held that Congress intended for Section 12601 to be analogous to Section 1983.

The parties agree about much. Defendants concede that the plain text of Section 12601 authorizes the United States to seek injunctive relief against law enforcement misconduct depriving persons of their constitutional rights. Def. Memo. 12-13. Presumably, Defendants cannot overcome *Maricopa County's* and *Colorado City's* holdings that Section 12601 protects against misconduct from enforcement of the State's official policies. The fundamental disagreement is whether Section 12601 is designed to protect <u>all</u> constitutional rights, including the right to keep and bear arms codified in the Second Amendment. After all, the plain text of the statute says as much. The State takes a different view, and invites this Court to carve out the Second Amendment from the other constitutional rights protected by Section 12601. The United States urges the Court to decline the State's invitation, and to uphold the statute's protection of all constitutional rights—even those the State disfavors.

## ARGUMENT

### I. Defendants' Procedural Error Bars Granting Their Motion.

This Court must ignore Defendants' improper submissions. Defendants attached voluminous materials to their motion, requesting the Court to consider

facts asserted in those materials. Def. Memo. 5, 17-19, Exs. C, D. However, as the Supreme Court reaffirmed earlier this year, a "court *cannot consider* matters outside the pleadings" when ruling on a Rule 12(b)(6) motion. *Berk v. Choy*, 607 U.S. 187, 193 (2026) (emphasis added; citation and internal quotation marks omitted). A court may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021) (citation and quotation marks omitted).

Defendants' exhibits C and D are not subject to judicial notice. Defendants submitted their extraneous materials to assert that the Department's past Section 12601 enforcement actions were narrowly focused. Even if the Court reviews those materials, it cannot take notice of the underlying "fact" Defendants are trying to prove, i.e., that the Departments' enforcement actions can only be narrowly focused as Defendants suggest.[5] Accordingly, the Court should disregard those extraneous materials and arguments based on them—and, *a fortiori*, the Court cannot consider the factual assertions *Amici* set forth in their brief.[6]

In *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040 (9th Cir. 2025), the district court took judicial notice of several documents and made factual conclusions based on those documents. The Ninth Circuit reversed, holding that even if it were proper to notice the documents, the parties disputed their significance. 150 F.4th at 1556. "[T]hese disagreements underscore that such issues are not capable of resolution at the pleading stage." *Id*.

Rather than attempt to resolve this disputed issue at the motion to dismiss stage, the Court should follow the Supreme Court in *City of Los Angeles v.*

---

[5] *See* Section V.C., *infra*, the Department's enforcement has not been so confined.

[6] *Amici* include former Civil Rights Division attorneys. Their discussion of internal deliberative work product of their former client in their brief is unseemly, at best, and improper to consider.

*Preferred Commc'ns, Inc.*, 476 U.S. 488 (1986), where the Court noted that in a constitutional case where facts are disputed, courts should not "decide the legal questions posed by the parties without a more thoroughly developed record . . . in which the parties have an opportunity to prove those disputed factual assertions upon which they rely." 476 U.S. at 494. This factual dispute is inappropriate to resolve at the pleading stage of this litigation, and the Court should deny the Defendants' motion.

## II. Plaintiff Has Plausibly Pled a Section 12601 Claim.

### A. *Berk* Confirmed That Defendants Face a Daunting Task to Prevail on a Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently confirmed in *Berk* that it is difficult for a defendant to prevail on a motion to dismiss. A complaint that plausibly asserts facts supporting a plaintiff's claims, "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk*, 607 U.S. at 193 (quoting *Twombly*, 550 U.S. at 556). "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery . . .." *Berk*, 607 U.S. at 194. The Supreme Court has "consistently rejected" efforts to require more. *Id*.

### B. A Section 12601 Claim's Three Elements.

Plaintiff brought this action pursuant to the statutory authority set forth in Section 12601. Compl. ¶ 55. Section 12601(a) states in pertinent part:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

Thus, to state a claim under Section 12601, the Complaint must plausibly allege three elements:

(1) a "governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority;"

(2) "to engage[d] in a pattern or practice of conduct by law enforcement officers;"

(3) that "deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

### C. The United States Has Plausibly Pled All Three Elements of a Section 12610 Claim.

Plaintiff has plausibly pled all three elements:

1. *Governmental Authority*. The Complaint alleges that California and the California Department of Justice are governmental authorities and law enforcement officers employed by Defendants are acting on their behalf. Compl. ¶¶ 56-58. These allegations are hardly disputable, and Defendants do not argue that Plaintiff has failed to plausibly plead this element of its claim.

2. *Enforcement*. The Complaint alleges that California law enforcement officers are enforcing the Glock Ban and the Roster. Compl. ¶¶ 52-54, 58. Again, these allegations are hardly disputable, and Defendants do not argue that Plaintiff has failed to plausibly plead this element of its claim.

3. *Second Amendment Violation*. Recently, in *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), the Supreme Court provided important guidance for courts reviewing Second Amendment claims. The Court summarized and clarified the two-part

"*Bruen* test."[7] At step one, a court must determine whether the law before it clashes with the plain text. *Id.*, 146 S. Ct. at 2043 (cleaned up). This requires a court to ask three questions:

A. Does the law apply to the people?

B. Does it concern any form of arms?

C. Does the law place any restrictions on either the possession or carrying of arms? *Id.*

If the answer to these three questions is "yes," the plain text applies and the law "is presumptively unconstitutional." *Id.* at 2044.

Thus, a plaintiff's burden under *Bruen* step one (as clarified in *Wolford*) is very light. It is not necessary to anticipate and counter Defendants' *Bruen* step two arguments—especially given that a plaintiff need only plead "the factual basis" of the complaint and need not "set out a legal theory." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

Plaintiff has plausibly pled all elements of a substantive violation of the Second Amendment. Compl. ¶¶ 18-24 (Glock Ban); 41-50 (Roster). Defendants do not dispute these allegations. They have chosen not to engage the Second Amendment issue at this stage of the litigation.[8] The issue before the Court is not whether the facts Plaintiff allege establishes a violation of the Second Amendment. They plainly do and Defendant does not dispute this. Defendants' motion is based

---

[7] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022).

[8] Even if Defendants had not conceded the constitutional question, at this stage of the litigation, for purposes of determining the merits of Defendants' argument regarding the scope of Section 12601, the Court would need to assume the merits of Plaintiff's constitutional claims. Whether a party can assert a claim in the first place must not be confused with the court's assessment of whether the party will ultimately succeed on the merits. *Cf. Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 911 n.5 (9th Cir. 2011) (warning against conflating the ultimate merits question with the threshold standing determination).

on a purely legal argument, i.e., Section 12601 does not authorize the United States to bring this action. This argument fails for the reasons set forth in the next section.

**III. Section 12601's Plain Text Authorizes the Relief That Plaintiff Seeks.**

**A. The "Cardinal Canon" of Statutory Interpretation.**

The "cardinal canon" of statutory interpretation is that a "legislature says in a statute what it means and means in a statute what it says there" regardless of whether "*legislative history points to a different result.*" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (emphasis added). When the words of a statute are unambiguous, this first canon is also the last and the "judicial inquiry is complete." *Id.* at 254 (citations and internal quotation marks omitted); *see also Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (internal citations omitted) (a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself; where that examination yields a clear answer, judges must stop); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (when interpreting a statute, the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case and, if so, the inquiry ceases). Thus, the best evidence of the purpose of a statute is the statutory text itself. *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991). "Where [statutory text] contains a phrase that is unambiguous . . . [courts] do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process." *Id*. at 98-99.

**B. The Plain Text Authorizes Plaintiff's Action.**

This dispute concerns the scope of law enforcement misconduct prohibited by Section 12601. Defendants incorrectly argue that the statute prohibits only *some* law enforcement conduct that deprives people of their rights. Wrong. Section

12601's plain text manifestly prohibits *all* law enforcement conduct depriving people of their constitutional rights.

The statute is unambiguous and its broad remedial scope is inescapable to any reasonable reader. As the Ninth Circuit stated in *Colorado City*, Section 12601 provides a civil cause of action to the United States Attorney General when the government's agents "engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 935 F.3d at 811 (cleaned up). Enforcing an unconstitutional law obviously deprives persons of their constitutional rights. Therefore, the statute authorizes the United States to seek to enjoin such conduct.

An analogy is helpful to demonstrate law enforcement misconduct stemming from enforcement of an unconstitutional statute. Suppose California passed a law making it illegal to make "grossly offensive" Facebook posts that tend to stir up hatred. As patently offensive as such posts might be, such a law clearly violates the First Amendment. Now, suppose California law enforcement officers go to a man's home and arrest him for such a posting. In that scenario, the California law enforcement officers engaged in certain conduct (i.e., arresting a man because he made offensive Facebook posts), and that conduct deprived the man of his First Amendment rights. If California law enforcement officers engaged in a pattern or practice of such conduct, the United States would be authorized to seek relief under Section 12601.

The text of Section 12601 proscribes law enforcement officers from engaging in "a pattern or practice of *conduct*" that deprives persons of their constitutional rights. The most common sense of the word "conduct" is "personal behavior." *The Random House Dictionary of the English Language*, 2nd ed., unabridged (New York: Random House, 1987); *Conduct*, Black's Law Dictionary (12th ed. 2024) ("[p]ersonal behavior . . .."). Thus, "conduct" means "personal behavior, whether

by action or inaction and is a term that transcends the legal context." *United States v. Jordan*, 509 F.3d 191, 196 (4th Cir. 2007) (citation and quotation marks omitted).

It follows that "to engage in a pattern or practice of conduct by law enforcement officers" means simply to engage in a pattern or practice of personal behavior by law enforcement officers. A violation of Section 12601 occurs if that behavior results in the deprivation of persons' constitutional rights. This is a straightforward conclusion drawn from unambiguous text.

Astoundingly, Defendants agree. They state that the definitions of the words used in the text lead to the conclusion that Section 12601 applies when law enforcement officers' "conduct itself [is] the thing that allegedly deprives persons of federal rights." Def. Memo., 14. That is correct. Defendants then state that "Section 12601 concerns a 'pattern or practice of conduct by law enforcement officers . . . *that* deprives persons' of constitutional or other federal rights." (emphasis in the original). That, too, is right. Defendants' own parsing of the plain text leads to the conclusion that Section 12601 is applicable.

Nevertheless, Defendants argue that the text compels the opposite conclusion. Def. Memo. 15. This does not follow from Defendants' own analysis. Defendants' *non sequitur* requests that the Court rewrite the statute and narrow its scope. Defendants argue the statute should not apply to law enforcement "conduct" generally, but only to a certain kind of law enforcement conduct which they call "abusive police practices." *See* Def. Memo. 16 (arguing that the statute proscribes only "abusive police practices" and not considering Second Amendment violations abusive). Defendants thus want the Court to edit the statute so that it applies only to law enforcement officers who have "engage[d] in a pattern or practice of ~~conduct~~ abusive police practices" that deprive persons of their constitutional rights.

Defendants are wrong for two reasons. First, even if, *arguendo*, their edit was valid, "abusive police practices" still fairly captures enforcement of unconstitutional laws. Secondly, the Court has no authority to edit the statute.

Defendants' argument amounts to this: Congress intended to confer a very narrow grant of remedial authority on the Department, but in a fit of inattentive drafting Congress accidentally conferred a very broad grant. Therefore, Defendants assert that this Court should fix Congress's mistake. But "[h]ad Congress intended to impose such a limitation, it could easily have [used those] simple word[s]. But it did not do so, and [courts] cannot rewrite the statute to insert an additional restriction that Congress omitted." *Charboneau v. Davis*, 87 F.4th 443, 454 (9th Cir. 2023).

## IV. Statutory Interpretation Leads to the Same Conclusion as the Plain Text Analysis.

The "cardinal canon" of statutory interpretation is that if a statute is unambiguous, the plain text controls and the judicial inquiry ends. *Barnhart*, 534 U.S. at 450. The unambiguous text of Section 12601 supports the conclusion that the statute authorizes Plaintiff to seek injunctive relief in this case. Accordingly, the judicial inquiry into the meaning of the statute should end. Even if the text were ambiguous, though, the other rules of statutory construction overwhelmingly support the same conclusion.

### A. The Legislative History of the 1991 Bill Supports Plaintiff's Claim.

In 1994, Congress passed Section 12601 as part of the Violent Crime Control and Law Enforcement Act of 1994, 108 Stat 1796 (Crime Act). Congress did not hold hearings on the provision of the Crime Act that became Section 12601. Thus, the statute does not have any legislative history. Section 12601 is, however, similar to a provision of H.R. 3371, a failed bill that would have enacted a statute called the Omnibus Crime Control Act of 1991 (1991 Bill). *United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *3 (S.D. Ohio Aug. 3, 2000). Significantly, the 1991 Bill's legislative history states: "The standards of conduct under the Act *are the same as those under the Constitution*, presently enforced in damage actions

under section 1983." H.R. Rep. No. 102–242, 102nd Cong., 1st Sess. at 138 (emphasis added) (Committee Report). Thus, the legislative history expressly states that Congress intended the text of the law to create an extremely broad remedy for the United States to redress violations of any constitutional right like the broad remedy available to private litigants under Section 1983. This shatters the State's argument that Section 12601 bears no relation to Section 1983. Def. Memo. 1.

### B. Section 12601 Overturned *City of Philadelphia*.

The Committee Report refers to the Third Circuit's decision in *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980). Defendants' reliance on that discussion (Def. Memo., 16) is misplaced.

*City of Philadelphia* held that the United States did not, at that time, have statutory authority to seek equitable relief for law enforcement misconduct. *See* 644 F.2d 197. The members of the committee thus saw that case as a problem to be solved, not an example to be followed. In other words, the whole purpose of Section 12601 was to close the "serious and outdated gap in the federal scheme for protecting constitutional rights" created by *City of Philadelphia*. Committee Report, 137. It is difficult to understand why Defendants believe the Court should follow the limitations imposed in *City of Philadelphia* when interpreting Section 12601 when the whole point of the statute was to overturn that case.

### C. Section 12601 and Section 1983 Should Be Interpreted *In Pari Materia*.

Section 12601 and Section 1983 are sister statutes addressing the same subject—remedying civil rights violations by government actors. *See Cnty. of Maricopa,* 889 F.3d at 653.[9] Under the *in pari materia* canon, statutes that address the same subject matter should be construed consistently with each other. *See*

[9] *See also United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *7 (S.D. Ohio 2000) (holding that the grant of authority to the Attorney General reflected in Section 12601 was drafted in light of Section 1983).

*Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006); *see also Branch v. Smith*, 538 U.S. 254, 281 (2003). Both statutes are remedial in nature. Section 1983 "was meant to be a remedial statute and should be 'broadly construed' to provide a remedy 'against all forms of official violation of federally protected rights.'" *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102 (9th Cir. 2021) (quoting *Dennis v. Higgins*, 498 U.S. 439, 445 (1991). Defendants argue that Section 12601 was passed to address a particular problem (Rodney King-type police abuse) and they erroneously assert that the statute has been employed only in that context. Even if these assertions were true, the history of Section 1983 demonstrates that the remedial scope of the statute is unaffected.

Congress passed Section 1983 as part of the Ku Klux Klan Act of 1871, ch. 22, 17 Stat. 13 (Klan Act). As the name of the Act implies, the members of the 42nd Congress who voted to enact Section 1983 had a very specific problem in mind (vindicating the constitutional rights of freedmen). Moreover, despite the statute's broad remedial language, it languished in obscurity for nearly a century.[10]

If Defendants' theory of Section 12601's statutory interpretation were correct—i.e., that the Court should apply the statute to redress only the few types of constitutional violations that Defendants think should be redressed—then Section 1983 likewise would have been cabined in and would long ago have been relegated to the status of a historical relic of the Reconstruction Era. After all, Section 1983 was passed to address a particular problem and it was sparsely enforced for decades. Thankfully, that did not occur. Section 1983 ultimately emerged as a powerful engine for vindicating deprivations of constitutional rights by government actors.

---

[10] "Despite its noble beginnings, § 1983 remained in disuse for nearly a century." Rodney A. Smolla, *The History of § 1983—The Civil Rights Act of 1871*, 2 Federal Civil Rights Acts § 14:2 (3d ed. 2026).

## V. Arguments That Section 12601 Does Not Apply Are Meritless.

Defendants advance several arguments in support of their assertion that Section 12601 does not impose liability. Plaintiff addresses those arguments in this section.

### A. No Authority Supports Defendants' Interpretation of Section 12601.

There is no support for Defendants' limited view of Section 12601's scope. According to Westlaw, as of August 14, 2026, Section 12601 (or, as it was previously codified, 42 U.S.C. § 14141) has been cited in 660 cases. Plaintiff's counsel reviewed all 660 cases. In the overwhelming majority of those cases (approximately 95%), courts dismissed *pro se* plaintiffs' attempts to assert a private right of action under the statute or mentioned the statute only incidentally in their discussion of other issues. Of the handful of remaining cases, only six courts engaged in any meaningful analysis of the statutory text. Based on this exhaustive research, no court has ever held that Section 12601 should be interpreted to radically narrow the reach of its plain text as Defendants suggest.

### B. Enforcement of an Unconstitutional Law Incurs Section 12601 Liability.

According to Defendants, Section 12601 does not impose liability when "law enforcement officers are enforcing the letter of the law" because in that case the "Complaint is directed to the statute itself." Def. Memo. 14. <u>No case</u> supporting Defendants' proposed limitation exists. Indeed, as we have seen, just the opposite is true. *Maricopa County,* 889 F.3d at 653; *Colorado City,* 935 F.3d at 810. The difference between the "official policy" at issue in *Maricopa County* and the Glock Ban and Roster statutes is of no consequence. The act of a "[legislative] body unquestionably constitutes an act of official government policy." *Pembaur* 475 U.S. at 480.

Unsurprisingly, counter to Defendants' assertion, the Department has used Section 12601 to remedy law enforcement officers' enforcement of unconstitutional laws. For example, in the Department's Report of Investigation of the Ferguson Police Department, March 4, 2015 (available at http://bit.ly/4vWiJ2j), the Department reported that law enforcement officers' enforcement of Ferguson, Missouri's unconstitutional Failure to Comply municipal ordinance was one of the patterns or practices of conduct that gave rise to constitutional violations in violation of Section 12601. *Id*. at 16, 19.

Defendants nevertheless argue that law enforcement officers' enforcement of a criminal statute cannot be a basis of liability because the statute itself, and not the officers' enforcement of the statute, deprives persons of their constitutional rights. Def. Memo. 14. This is wrong as a matter of Section 12601 law as *County of Maricopa* plainly holds. Defendants' position also conflicts with decisions under Section 12601's sister statute, Section 1983. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court stated that a city "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional *implements or executes* a policy statement, ordinance, regulation, or decision officially adopted and promulgated." *Id*. at 690 (emphasis added). Thus, it is the "*execution* of a government's policy . . . [that] inflicts the injury [for which] the government as an entity is responsible under § 1983." *Id*. at 694. (emphasis added). Contra Defendants' assertion, it is the implementation or execution of a law that "inflicts the injury," *id*., and not merely the law's existence. This is plain from *Heller* itself. *See D.C. v. Heller*, 554 U.S. 570, 636 (2008), where the Supreme Court affirmed the D.C. Circuit's judgment ordering entry of an injunction barring the District of Columbia's law enforcement officers from enforcing the unconstitutional law. That order would make no sense if those law enforcement officers' conduct of enforcing the

unconstitutional law was not the conduct that resulted in the deprivation of the plaintiffs' Second Amendment rights.

Defendants' argument makes no sense. The mere existence of a law does not violate anyone's rights if the law is never enforced.[11] Where criminal laws are concerned, people's rights are violated when other people (usually law enforcement officers) engage in conduct that violates them. The remedy for an unconstitutional statute is to enjoin its enforcement, not to order the legislative body to repeal it. Courts have no power to do the latter. *See Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021) (No court may enjoin challenged laws themselves; an injunction only prevents "named defendants from taking specified unlawful actions.").

### C. The Department's Past Practice Does Not Cabin the Scope of the Statute.

Defendants engage in an extensive discussion of past agency practice with respect to the enforcement of Section 12601. Def. Mot. 7-9. According to Defendants, in the past, the Civil Rights Division has focused exclusively on Defendants' characterization of abusive police tactics cases and has not enforced Section 12601 the way it is enforcing the statute in this action.[12]

Even if the Court were to consider the matters that Defendants raised, their discussion of past agency practice would not move the needle in favor of their motion for several reasons. First, the Defendants' assertions are simply false. The

---

[11] No one has standing to challenge a moribund law. *See Mayle v. State of Illinois*, 956 F.3d 966, 970 (7th Cir. 2020) (plaintiff lacked standing to challenge criminal laws that were no longer enforced but remained in statute books "as a residue of legislative inertia").

[12] Again, the Court should limit its review to the "four corners" of the Complaint. Defendant's allegations about the scope of past agency practice are contested, and cannot be resolved at this stage.

Division's past practice has not been as limited as Defendants suggest.[13] For example, one of the Division's major enforcement actions was against defendants who violated the Establishment Clause of the First Amendment. *See Colorado City*, 935 F.3d at 806. There were no allegations of police brutality. In *Maricopa County*, the allegations of misconduct included filing baseless lawsuits in retaliation for exercising First Amendment rights.[14] It is difficult to imagine conduct less similar to the incident involving Rodney King. If the Department has employed the statute to remedy First Amendment violations, why can't it also employ it to remedy Second Amendment violations? Defendants do not say.

More importantly, even if the Department is enforcing the statute in a way that is different from its past practice, that has no relevance to the scope of the authority Congress granted to the Attorney General in Section 12601. Different administrations have different priorities, and the agency practice in prior administrations does not delineate the scope of the authority set forth in a statute. Nor does it bind the agency or preclude it from deviating from that practice in the future. The Supreme Court made this clear in *United States v. Am. Union Transp.*, where it stated:

---

[13] Past administrations have exercised their prosecutorial discretion to use Section 12601 to investigate and bring enforcement actions to remedy: enforcement of local ordinances that are facially unconstitutional; First, Fourth, Sixth, Eighth, and Fourteenth Amendment violations, Title VI violations, and to challenge the conduct of law enforcement exercised through court clerks, prosecutors, non-sworn staff, and sworn officers and deputies. *See* "Special Litigation Section Cases and Matters, Law Enforcement Agencies," available at https://www.justice.gov/crt/special-litigation-section-cases-and-matters#police. Arguably, some of the findings that past administrations have reached have identified alleged misconduct beyond the bounds of a constitutional or federal statutory requirement, but none have suffered the opposition offered here.

[14] *United States v. Maricopa County*, 915 F. Supp. 2d 1073, 1081 (D. Ariz. 2013).

> An administrative agency is not ordinarily under an obligation immediately to test the limits of its jurisdiction. It may await an appropriate opportunity or clear need for doing so. . . . Although failure to exercise power may be significant as a factor shedding light on whether it has been conferred . . . that fact alone neither extinguishes power granted nor establishes that the agency to which it is given regards itself as impotent. *Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise.*

327 U.S. 437, 454 n.18 (1946) (internal citations and quotation marks omitted) (emphasis added). *See also Fed. Trade Comm'n v. Bunte Bros*., 312 U.S. 349, 352 (1941) ("Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise."); *United States v. E. I. du Pont de Nemours & Co*., 353 U.S. 586, 590 (1957) (mere failure of an administrative agency to act is not "a binding administrative interpretation" that the government lacks the authority to act).

Defendants cite *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024), which held that an agency's longstanding practice can inform a court's analysis of an ambiguous statute. Def. Mot. 18. Defendants' reliance on *Loper Bright* is problematic for three reasons. First, in that passage, the *Loper Bright* court was *not* referring to the interpretation of unambiguous statutes such as Section 12601. Second, in the very next paragraph, the Court stated that even if a court considers past practice, it is not bound by it. *Id*. Third, *Loper Bright* stands for exactly the contrary proposition for which Defendants cite it. Defendants claim that it supports an extratextual gloss on Section 12601. But, the Court directed the opposite. The Court stated that "statutes . . . have a single, best meaning" that is

"'fixed at the time of enactment.'" *Id*. at 400 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)).[15]

**D. What Members of Congress Subjectively Intended Is Not Relevant to the Statute's Scope.**

Defendants argue that notwithstanding the plain text of Section 12601, its scope is limited to addressing Rodney King-like situations. Def. Memo. 16. Defendants cite no authority for the proposition that a statute is limited by what members of Congress might have been thinking about when they voted for it, and there is none. Conversely, there is plenty of authority for the opposite proposition. "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (cleaned up; citation omitted).

Defendants say the United States' use of Section 12601 would dramatically expand its authority under the statute. Def. Mot. 17. This is simply incorrect. Either the plain text of the statute confers certain authority on the United States or it does not. Whether the United States has used the statute in a particular way is irrelevant to the issue of whether it has the power to do so.

**E. Legislative History Is Not the Law**

Defendants' arguments find no purchase in Section 12601's text. They face the same predicament the defendants in *Colorado City*, and that court's observation is equally pertinent: "Unable to muster support for its position in the statutory text, Colorado City urges us to examine § 12601's legislative history. But the Supreme Court has admonished that 'legislative history is not the law.' That principle is

---

[15] The passage in *Loper Bright* most applicable here, really, is from Justice Gorsuch's concurrence, critiquing those who "abhor plain meaning and preferred instead to elevate legislative history and their own curated accounts of a law's 'purpose' over enacted statutory text." *Id*., 603 U.S. at 443 n.6 (2024) (Gorsuch, J., concurring) (cleaned up) (internal citation and quotation marks omitted).

particularly salient in a case where the legislative history is *virtually non-existent*." 935 F.3d at 810 (cleaned up; citations omitted; emphasis added).

Defendants nevertheless urge this Court to impose their preferred judicial gloss on the text and narrow its application based on that same virtually non-existent legislative history. However, the statute is not ambiguous, so legislative history is irrelevant to its interpretation. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024) (holding that "we need not address legislative history if 'after analyzing the text, structure and context, we conclude that the language is unambiguous'") (citation and quotation omitted). This is true even if—as Defendants mistakenly believe—the legislative history of the 1991 Bill actually pointed in a different direction than the text of Section 12601. "[T]here would be no need for a rule—or repeated admonition from the Supreme Court—that there should be no resort to legislative history when language is plain and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions." *U.S. ex rel. Totten v. Bombardier Corp*., 380 F.3d 488, 494–95 (D.C. Cir. 2004).

Defendants' other problem is that the legislative history—such as it is—actually supports a very expansive interpretation of the scope of Section 12601 consistent with the broad scope of Section 1983 and Congress' desire to close the "serious and outdated gap in the federal scheme for protecting constitutional rights" that *City of Philadelphia* created. Defendants' devotion to legislative history has the same problem the Supreme Court articulated in *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd*, 146 S. Ct. 1546, 1558–59 (2026). The Court noted that there is really no way to know what the committee members (much less the other members of Congress) thought about a bill by perusing a committee report. 146 S. Ct. at 1558. The Court declined to revive the "old-time devotion to legislative history," because it is far better to focus on the text of the statute instead of a "psychoanalysis of Congress." *Id*. at 1559 (citation omitted).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss.

Respectfully submitted this 25th day of August 2026.

*/s/ Barry K. Arrington*
Barry Arrington
Acting Chief
Second Amendment Section

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the United States, certifies that this brief containes 6,384 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 25, 2026

Respectfully submitted,

*/s/ Barry K. Arrington*
Barry Arrington
Acting Chief
Second Amendment Section