ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
VIVIANA M. HANLEY
CHRISTINA MCCALL
SABRINA T. MCGRAW
EDWARD P. WOLFE (SBN 247835)
Deputy Attorneys General
600 W Broadway, STE 1800
San Diego, CA 92101-3375
Telephone: (619) 321-5426
Fax: (916) 731-2124
E-mail: Edward.Wolfe@doj.ca.gov
*Attorneys for Defendants State of California and Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**STATE OF CALIFORNIA and ROBERT BONTA, in his official capacity as the head of the California Department of Justice,**<br><br>Defendants. | 8:26-cv-01697-MRA-ADSx<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: Sept. 11, 2026<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: The Honorable Mónica Ramírez Almadani<br>Trial Date: None set<br>Action Filed: July 1, 2026 |

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1
ARGUMENT ..... 2
I. The United States Does Not State a Section 12601 Claim ..... 2
A. This Suit Is a Facial Challenge to California Laws ..... 2
B. The United States Does Not Meaningfully Address the Plain Language of Section 12601 ..... 3
C. Comparison with Section 1983 Highlights Section 12601's Narrower Scope ..... 7
D. The History and Past Use of Section 12601 Reinforce Its Textual Interpretation ..... 12
1. Section 12601's History Is Inconsistent with the United States's Expansive, Atextual Interpretation ..... 12
2. The United States's Past Use of Section 12601 Is Inconsistent with Its Current Interpretation ..... 17
II. Defendants Properly Requested Judicial Notice of Legislative History and Government Documents ..... 19
III. The Court Should Dismiss Without Leave to Amend ..... 20
CONCLUSION ..... 21
CERTIFICATE OF COMPLIANCE ..... 22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Boland v. Bonta*
662 F. Supp. 3d 1048 (S.D. Cal. 2023) ............ 16

*Bucklew v. Precythe*
587 U.S. 119 (2019) ............ 2

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ............ 15

*Connick v. Thompson*
563 U.S. 51 (2011) ............ 11

*Dennis v. Higgins*
498 U.S. 439 (1991) ............ 7

*Diamond S.J. Enter., Inc. v. City of S.J.*
100 F.4th 1059 (9th Cir. 2024) ............ 5

*District of Columbia v. Heller*
554 U.S. 570 (2008) ............ 12

*Erlenbaugh v. United States*
409 U.S. 239 (1972) ............ 11

*Firstar Bank, N.A. v. Faul*
253 F.3d 982 (7th Cir. 2001) ............ 12

*Fischer v. United States*
603 U.S. 480 (2024) ............ 13

*Hoye v. City of Oakland*
653 F.3d 835 (9th Cir. 2011) ............ 2

*Italian Colors Rest. v. Becerra*
878 F.3d 1165 (9th Cir. 2018) ............ 2

*Jaymes v. Bonta*
No. 3:25-cv-02711 (S.D. Cal.) ............ 16

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Learning Res., Inc. v. Trump*
607 U.S. 229 (2026) ....................17

*Loper Bright Enterprises v. Raimondo*
603 U.S. 369 (2024) ....................17

*Minn. Voters All. v. Mansky*
585 U.S. 1 (2018) ....................3, 5

*Monell v. Dep't of Social Services of City of N.Y.*
436 U.S. 658 (1978) ....................11, 12

*Monroe v. Pape*
365 U.S. 167 (1961) ....................16

*Nw. Ass'n of Indep. Schs. v. Labrador*
166 F.4th 1148 (9th Cir. 2026)....................5

*Pakootas v. Teck Cominco Metals, Ltd.*
632 F. Supp. 2d 1029 (E.D. Wash. 2009)....................11

*Pembaur v. Cincinnati*
475 U.S. 469 (1986) ....................11

*Project Veritas v. Schmidt*
125 F.4th 929 (9th Cir. 2025)....................3

*Renna v. Bonta*
667 F. Supp. 3d 1048 (S.D. Cal. 2023) ....................16

*Rodriguez v. Cnty. of L.A.*
891 F.3d 776 (9th Cir. 2018)....................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
551 U.S. 308 (2007) ....................19

*United States v. the City of Ferguson*
No. 4:16-cv-00180 (E.D. Mo., Feb. 10, 2016) ....................18, 19

*United States v. City of Philadelphia*
644 F.2d 187 (3d Cir. 1980) ....................14, 15, 16

## TABLE OF AUTHORITIES (continued)

**Page**

*United States v. Cnty. of Maricopa*
889 F.3d 648 (9th Cir. 2018) .......... 8, 9

*United States v. Colorado*
No. 1:26-cv-1950 (D. Colo) .......... 6

*United States v. County of Maricopa*
No. 12-cv-981 (D. Ariz. May 10, 2012) .......... 8, 9

*United States v. Denver*
No. 1:26-cv-1929 (D. Colo.) .......... 6

*United States v. District of Columbia*
No. 1:25-cv-0445 (D.D.C.) .......... 6

*United States v. Montgomery County, Maryland*
No. 8:26-cv-3025 .......... 6

*United States v. Town of Colorado City*
935 F.3d 804 (9th Cir. 2019) .......... *passim*

*United States v. Virgin Islands*
No. 3:25-cv-00050 .......... 6

*United States v. Virginia*
No. 1:26-cv-2035 (E.D. Va.) .......... 6

*United States v. Warren*
820 F.3d 406 (11th Cir. 2016) .......... 11

**STATUTES**

United States Code
Title 34
§ 12601 .......... *passim*
Title 42
§ 1983 .......... *passim*
Title 42
§ 1988(b) .......... 5

California Unsafe Handgun Act .......... *passim*

## TABLE OF AUTHORITIES
## (continued)

**Page**

California Assembly Bill
No. 1127 .......... *passim*

Civil Rights Act of 1964 .......... 14, 16

**Constitutional Provisions**

United States Constitution
First Amendment .......... 4, 5, 17, 18
Second Amendment .......... *passim*
Fourth Amendment .......... 17, 18
Fourteenth Amendment .......... 9, 14, 18

**Federal Court Rules**

Federal Rule of Civil Procedure
12(b)(6) .......... 19, 20

Federal Rule of Evidence
201(b) .......... 19

**Legislative History**

House Reports
H.R. Rep. 102-242, pt. I .......... 5
H.R. Rep. No. 102-242 .......... 13, 14, 15
H.R. Rep. No. 7152 .......... 16

Police Accountability Act of 1991 .......... 13, 14

## INTRODUCTION

The United States seeks an order from this Court enjoining *any* implementation of the Unsafe Handgun Act's safety feature requirements and Assembly Bill 1127's sales restriction based on its claim that these laws' commercial limitations violate the Second Amendment on their face. That is a direct challenge to those laws, not to a pattern or practice of conduct by law enforcement officers. Congress enacted 34 U.S.C. § 12601 (Section 12601) to provide the United States with specific, limited authority to sue over systemic "conduct by law enforcement officers" that deprives individuals of federal rights. The United States now asserts that Section 12601 confers much more expansive federal powers, which no prior administration has claimed, to facially challenge the constitutionality of state laws without any evidence of officer misconduct at all. This novel theory would render the phrase "conduct by law enforcement officers" in Section 12601 irrelevant. Although the United States attempts to veil its Second Amendment facial challenge as a Section 12601 "pattern or practice" suit, that effort fails to transform this case into the type of lawsuit that Section 12601 actually authorizes.

The United States's unprecedented use of Section 12601 arises from its belief that the statute gives it the same authority to facially challenge state laws that 42 U.S.C. § 1983 (Section 1983) gives to private litigants. Defendants demonstrated in their Motion to Dismiss that nothing in Section 12601's plain language, legislative purpose, or historical usage supports this interpretation. In its Opposition, the United States does not meaningfully respond to these points, asserting instead a series of specious strawman arguments. The United States's refusal to address the arguments Defendants actually made suggests that it is unable to do so. The United States cannot state a claim under Section 12601 and has failed to show otherwise. The Court should dismiss the Complaint with prejudice.

///

## ARGUMENT

### I. THE UNITED STATES DOES NOT STATE A SECTION 12601 CLAIM

Although the United States claims that it has adequately pleaded a Section 12601 claim, Resp. in Opp'n to Defs.' Mot. to Dismiss 6–8, ECF No. 42 (Opp'n), its allegations demonstrate that the United States still does not understand Section 12601. The United States fails to identify a "pattern or practice of conduct by law enforcement officers" that itself "deprives persons" of federal rights. Enforcement of "unconstitutional statutes," Opp'n 2, is not an actionable "pattern or practice of conduct" within the meaning of Section 12601: It is the allegedly unconstitutional statutory provisions, pertaining to the commercial sale and manufacture of certain firearms, that the United States claims violate rights. Whether that constitutional claim is correct does not require any analysis of conduct by law enforcement officers. Section 12601 authorizes the United States to seek to enjoin unlawful conduct by law enforcement officers. Interpreting Section 12601 to authorize the United States to litigate constitutional claims that arise purely from the allegedly unconstitutional nature of statutory provisions pertaining to firearms sales uncouples Section 12601 from the law enforcement conduct it explicitly addresses. This Court should reject this atextual interpretation.

#### A. This Suit Is a Facial Challenge to California Laws

Contrary to the United States's argument, Opp'n 1 n.4, the absence of the word "facial" in the United States's Complaint does not change the character of this lawsuit: a facial challenge to provisions of the Unsafe Handgun Act (UHA) and to Assembly Bill (AB) 1127, which Section 12601 does not authorize.

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). "[A] facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). A successful facial challenge "invalidates the law itself." *Italian Colors Rest. v.*

*Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) (internal quotations omitted). Whether a plaintiff labels its constitutional challenge "facial" or not does not matter. *See Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025) ("[T]he label is not what matters" in assessing whether a challenge is facial (internal quotations omitted)).

The United States alleges throughout its Complaint that both the challenged provisions of the UHA and AB 1127 are unconstitutional as a matter of law based on their text. *See, e.g.*, Compl. ¶¶ 4, 40, 51. And, the United States repeatedly refers to the "statute[s]" as unconstitutional. *See, e.g.*, Opp'n 1–2, 9, 14, 16. The United States seeks to enjoin enforcement of these statutes *entirely*, not only in some applications. *See* Compl. Prayer for Relief. This case is a direct facial challenge to these laws themselves, no matter how the United States labels it. Because law enforcement conduct is irrelevant in a facial challenge like this one, *see infra* at 4–5, Section 12601 does not authorize this suit.

### B. The United States Does Not Meaningfully Address the Plain Language of Section 12601

The United States's argument that "Section 12601's plain text manifestly prohibits *all* law enforcement conduct depriving people of their constitutional rights," Opp'n 8–9, ignores an important textual limitation: as to law enforcement officers, Section 12601 only provides a cause of action where they "engage in a pattern or practice of conduct … that deprives persons" of federal rights. This means that the deprivation of persons' rights must arise from conduct by a law enforcement officer that is part of a "pattern or practice," and the conduct itself must be what violates rights. The United States's bold assertion that Section 12601 authorizes it to seek to remedy "all" constitutional violations involving law enforcement officers cannot be squared with these textual limitations.

The United States's definition of "conduct," as "personal behavior" supports Defendants' position. Opp'n 9. Indeed, the United States leaves out the part of

Black's Law Dictionary's definition of "conduct" that states, "the manner in which a person behaves." The United States's attempt to use the statute here has nothing to do with law enforcement officers' "personal behavior" or the "manner" in which they behave. If officers had a pattern or practice of enforcing UHA or AB 1127 only against a particular race or gender, that sort of claim could be actionable under Section 12601. But here, the United States does not claim that officers enforce the UHA or AB 1127 in a "manner" that is itself unconstitutional as applied, but rather, that the laws enforced are facially unconstitutional. Section 12601 does not confer authority to bring this challenge.

By insisting otherwise, the United States fails to make sense of Section 12601's text. Section 12601 authorizes challenges to systemic, rights-depriving "conduct by law enforcement officers." If the predicate claim of a deprivation of federal rights could succeed on the merits without proving any instance of actual enforcement conduct, that challenge is not fairly characterized as a challenge to "conduct by law enforcement officers." Such claims are therefore outside the scope of what Section 12601's text authorizes. Yet here, the underlying Second Amendment claims on which the United States predicates this Section 12601 action hinge on the textual details of a statutory scheme about commercial firearm sales. *See* Pl.'s Prelim. Inj. Mot. (ECF No. 28) 2–10. Congress would not have authorized challenges specifically to "conduct by law enforcement officers" if it intended to authorize lawsuits like this, where the underlying claim of unconstitutionality is based on a facial challenge that does not require proving any conduct by law enforcement officers at all.

The United States's "analogy" to a hypothetical Section 12601 action challenging a law that facially violates the First Amendment, Opp'n 9, gets it nowhere. The hypothetical it envisions—in which the challenged "pattern or practice" consists of a single arrest by law enforcement officers of one individual—suffers from the same flaw as this case. Because the predicate constitutional claim

could succeed *without proof of a single fact about a pattern or practice of law enforcement conduct*, that claim would not be an attack on conduct by law enforcement officers. *Cf. Nw. Ass'n of Indep. Schs. v. Labrador*, 166 F.4th 1148, 1155, 1165–69 (9th Cir. 2026) (holding that plaintiff's claim that Idaho law facially violated First Amendment was likely to succeed without any discussion of enforcement practices). Consequently, Section 12601 would not authorize that suit.

Of course, in the United States's hypothetical, Section 1983 would provide a cause of action for the impacted individual to challenge the statute's constitutionality. *See, e.g.*, *Id.* at 1154; *Minn. Voters All. v. Mansky*, 585 U.S. 1, 10 (2018) (Section 1983 action brought by individuals turned away from polls pursuant to state law they claimed facially violated the First Amendment); *Diamond S.J. Enter., Inc. v. City of S.J.*, 100 F.4th 1059, 1066 (9th Cir. 2024) (Section 1983 action brought by business whose license was suspended pursuant to ordinances it claimed facially violated the First Amendment). That private litigants could bring suit in these contexts explains why there was no need for Congress to authorize *the United States* to challenge a facially unconstitutional law. Indeed, Congress ensured that individuals would be incentivized to bring such claims by providing for attorney's fees to prevailing Section 1983 litigants. *See* 42 U.S.C. § 1988(b). In contrast, Section 12601 was enacted to address what was then a "gap in the federal scheme for protecting constitutional rights" posed severe limitations on the ability of private individuals *and* inability of the federal government to obtain orders enjoining systemic, rights-depriving officer misconduct. H.R. Rep. 102-242, pt. I (ECF No. 29-3) at 137; *see infra* at 15–16.

Indeed, the United States's First Amendment analogy underscores the sweeping nature of the power it claims here: the authority to challenge any laws it believes unconstitutional wherever it perceives them. The United States's only response to the serious federalism concerns this power grab raises is to insist that there is no expansion of authority because Section 12601 has always meant what

the United States asserts it means now. Opp'n 19. That question-begging response fails to explain why Congress would have used such opaque language to dramatically shift power from the States to the federal government had Congress's intention been to do so, particularly given Congress's repeated refusal to confer such power in the past. *See* Defs.' Mot. to Dismiss Compl. 19–20, ECF No. 29 (MTD).

Next, the United States's claim that Defendants ask the Court to "edit" Section 12601 to remove the term "conduct" and replace it with "abusive police practices," Opp'n 10, is one of many strawmen. Defendants do not ask the Court to ignore the word "conduct," but rather to mind what it requires: that the deprivation of a right that the United States seeks to redress is within the "conduct"—or "personal behavior"—of law enforcement officers. By limiting Section 12601 to cases arising from a pattern or practice of law enforcement *conduct*, Congress chose to limit its scope to those cases where rights are deprived because of something in the *manner* in which law enforcement officers act.

Although the United States argues that no authority supports this plain text reading, Opp'n 14, that is for the obvious reason that no prior administration has tried to use Section 12601 to facially challenge state laws in this way.[1] Thus, no court has had the opportunity to address the issue until this administration.[2] And there is no authority approving the United States's expansive interpretation, either.

[1] *See* proposed amicus brief submitted on behalf of former Civil Rights Division officials, ECF No. 36-2.

[2] As Defendants noted in their opposition to the United States's Application for a Temporary Restraining Order, the United States recently filed several similar Section 12601 claims challenging firearm safety laws. Although motions to dismiss remain pending in several of those cases, to date, none have been resolved. *See United States v. Denver*, No. 1:26-cv-1929 (D. Colo.) (motion to dismiss filed August 10, 2026, and pending); *United States v. Colorado*, No. 1:26-cv-1950 (D. Colo) (motion to dismiss filed June 30, 2026, and pending); *United States v. District of Columbia*, No. 1:25-cv-0445 (D.D.C.) (motion to dismiss filed June 25, 2026; action stayed); *United States v. Virginia*, No. 1:26-cv-2035 (E.D. Va.) (action stayed); *United States v. Virgin Islands*, No. 3:25-cv-00050 (motion to dismiss filed July 23, 2026, and pending); *United States v. Montgomery County, Maryland*, No. 8:26-cv-3025 (motion to dismiss filed August 27, 2026, and pending).

Defendants do not ask the Court to rewrite the statute, but instead to apply it exactly as written. Meanwhile, the United States ignores the key words and refuses to engage in a plain text analysis.

### C. Comparison with Section 1983 Highlights Section 12601's Narrower Scope

The United States argues that Section 12601 grants it the same "extremely broad" authority to "redress violations of any constitutional right" that Section 1983 grants to private individuals. Opp'n 12. Direct comparison of the pertinent language of the two statutes reveals significant differences that preclude interpreting them in the same way. Section 12601(a) provides:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers … that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

In contrast, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

These statutes share only one common phrase: they both provide a cause of action to redress the deprivation of "rights, privileges, or immunities secured [or protected] by the Constitution [and/or] laws" of the United States. The Supreme Court has held that this phrase should be "broadly construed" to encompass "all forms of official violation of federally protected rights," and not limited to, for example, civil rights or equal protection laws. *Dennis v. Higgins*, 498 U.S. 439, 443–45 (1991). Given that Congress, when drafting Section 12601, knew how

///

courts interpret that language, it is reasonable to interpret its use in Section 12601, pertaining to which rights the statute secures, in the same way.[3]

The United States argues that this similarity should extend much further, such that Section 12601 would provide it with a cause of action in any case where Section 1983 would provide an individual with a cause of action. *See* Opp'n 12. But the United States cannot (and does not) explain why the two statutes with substantially different language should be interpreted in the same way. To do so would require giving no legal effect to the "pattern or practice of conduct by law enforcement officers" limitation in Section 12601, which confines the statute's scope to deprivations of rights that occur in a specific way.

The United States claims that two Ninth Circuit decisions support its position that Section 12601 authorizes facial challenges like Section 1983 does: *United States v. Cnty. of Maricopa*, 889 F.3d 648 (9th Cir. 2018) and *United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019). Opp'n 3, 14. Defendants addressed both decisions in their moving brief. MTD 18. Both cases involve quintessential law enforcement misconduct, and neither involves a facial challenge to a statute. The United States overstates their relevance here.

First, in *County of Maricopa*, the constitutional violation was based upon officers' *conduct*. The case involved allegations by the United States that the sheriff's office targeted Latinos, and that the county failed to adopt training and oversight practices to prevent such discriminatory conduct. Compl. ¶¶ 25, 64, 80, *United States v. County of Maricopa*, No. 12-cv-981 (D. Ariz. May 10, 2012). The "official policy" at issue related to fostering that conduct, alleging that the county "created and fostered institutional bias against Latinos … encourag[ing] the unlawful treatment." *Id.* ¶ 101. The facial constitutionality of a statute was not at

[3] The United States claims that Defendants argue that Section 12601 does not reach Second Amendment violations. *See, e.g.*, Opp'n 3, 8. Defendants have never taken that position.

issue. This case is nothing like *County of Maricopa* because, here, the only assertion about law enforcement conduct is the generic allegation that "California Law Enforcement Officers ... are fulfilling their statutory duty to enforce" the UHA and AB 1127, and the conclusory statement that "these laws have been enforced in a manner that violates the Second Amendment." Compl. ¶¶ 58–59. There are no specific allegations describing a pattern or practice of actual enforcement *conduct*. And the alleged unconstitutionality flows from the restrictions on firearm sales set out in the text of the challenged laws, not the manner in which those restrictions are enforced.

The United States places significant weight on the Ninth Circuit's remark in *County of Maricopa* that Section 12601 "goes even further" than Section 1983. Opp'n 3. But this quote addressed only the fact that Section 12601 imposes liability on "any governmental authority," whereas Section 1983 imposes liability only on "person[s]." 889 F.3d at 652–53. These phrases concern the actors upon whom these statutes impose liability. That language is not relevant here, where the question is not *who* may be sued but *what* they may be sued for. Indeed, in *County of Maricopa*, the Ninth Circuit acknowledged that while Section 1983 and Section 12601 are both civil rights remedies, Section 12601 was enacted as a remedy "specifically for violations that are systematically perpetrated by local police departments." *Id.* at 653.

Likewise, *Colorado City* does not involve a facial attack on a law, but rather systemic police misconduct—precisely the type of situation Section 12601 was intended to address. The United States brought a Section 12601 action against two towns, alleging that their shared police department engaged in a pattern or practice of conduct that violated the First, Fourth, and Fourteenth Amendment rights of their residents. 935 F.3d at 806. Most of the towns' residents were members of the Fundamental Church of Jesus Christ of Latter-Day Saints (FLDS), and the United States alleged that, among other actions, the police department impermissibly took

direction from FLDS leadership, "selectively enforce[ed] the law based upon religion," and arrested non-FLDS residents without probable cause. *Id.* at 806–07 (internal quotations omitted). The towns argued they could not be held responsible for the actions of police officers because there was no "official" policy promoting the officers' conduct, which is required for direct municipal liability under Section 1983. *Id.* at 808. The towns further argued that, as with Section 1983, Section 12601 should not impose respondeat superior liability. *Id.* The Ninth Circuit rejected the towns' argument and noted that Section 1983 is an exception to the general rule that respondeat superior applies under civil rights statutes. *Id.* at 808–09. The Court declined to extend that exception to Section 12601 based on differences in the language between the two statutes, and inferred from the different language that "Congress intended to allow for *respondeat superior* liability against local governments pursuant to [Section] 12601." *Id.*

Nothing in *Colorado City* supports the United States's position that Section 12601 allows the United States to directly challenge the constitutionality of a statute. It did not involve a facial challenge to a statute, or even an "official policy." Rather, the towns' police officers engaged in a "pattern or practice of conduct" that violated residents' rights based on the regular and repeated nature of that conduct, not due to enforcement of an underlying law. *Id.* at 810 (explaining that the phrase "pattern or practice" could "refer to an official policy or custom," or could "refer to a regular event").

The United States argues that in both *Maricopa County* and *Colorado City*, the Ninth Circuit endorsed the United States's view that Section 12601 authorizes facial challenges to state laws by stating that Section 12601 claims reach violations arising from "official policy." Opp'n 1–2. However, the Ninth Circuit's reference to "official policy" was in the context of municipal liability, and there is no reason to believe the Ninth Circuit intended it to have any broader meaning. "Official policy" has a particular meaning in Section 1983 municipal liability litigation, which

developed in response to the Supreme Court's holding in *Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 692 (1978), that municipalities can only be liable under Section 1983 if an "'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). This "'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). "Official policy" broadly includes government "policy or custom," as set by policymakers; failure of a policymaker to remediate violations; training of employees in a way likely to result in constitutional violations; or acts by or ratified by an ultimate policymaker. *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802–03 (9th Cir. 2018). The Ninth Circuit's discussion of "official policy" in *Colorado City* pertained specifically to this issue of whether a municipality has taken sufficient action to be directly liable under Section 1983—it had nothing to do with whether a state law can be facially challenged under Section 12601.

The United States next claims that Section 12601 and Section 1983 should be interpreted "in pari materia." Opp'n 12–13. Use of this canon of interpretation does not help the United States. The canon "is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972). Its use "makes the most sense" when comparing statutes that "were enacted by the same legislative body at the same time." *Id.* at 244. Moreover, the canon is only applied where the language in one statute is ambiguous. *Pakootas v. Teck Cominco Metals, Ltd.*, 632 F. Supp. 2d 1029, 1033 (E.D. Wash. 2009); *United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016). The canon provides that "different acts which address the same subject matter … should be read together such that the ambiguities in one may be resolved by reference to the other."

*Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 990 (7th Cir. 2001).

Here, it is unclear what ambiguity the United States argues should be resolved through application of the *in pari materia* canon because the United States elsewhere argues that Section 12601 is *not* ambiguous. *See, e.g.*, Opp'n 9, 20. Regardless, the United States's proposed application of *in pari materia* turns the canon on its head: rather than arguing that an ambiguous word in one statute should have the same meaning as the same word in another statute, the United States argues that two statutes should be interpreted in the same way *despite using different words*. The Ninth Circuit certainly did not do so in *Colorado City* when it interpreted the two statutes' different language to produce different meanings with respect to respondeat superior. 935 F.3d at 809–10. This Court should also decline to do so here.

Finally, the United States argues that under *Monell* and *District of Columbia v. Heller*, 554 U.S. 570 (2008), the implementation or execution of a law "inflicts the injury" for which "the government as an entity is responsible under § 1983." Opp'n 15–16. However, as discussed above, *Monell* addresses the question of when a municipality may be held directly liable under Section 1983 and does not involve a facial challenge to a statute. And while *Heller* does involve a facial challenge to District of Columbia laws, Defendants have never disputed that private individuals may bring such actions. The issue is that the United States has no authority under Section 12601 to facially challenge state laws. Reference to cases interpreting and applying Section 1983 is therefore irrelevant.

### D. The History and Past Use of Section 12601 Reinforce Its Textual Interpretation

#### 1. Section 12601's History Is Inconsistent with the United States's Expansive, Atextual Interpretation

The United States denigrates Defendants' reliance on legislative history, Opp'n 8, 19–20, but makes no effort to address the Supreme Court's recent

confirmation that it is appropriate to consult the "history" of a statutory provision in interpreting its meaning, especially where, as here, the statute was designed to "plug" a problematic "loophole." *Fischer v. United States*, 603 U.S. 480, 491 (2024). As Defendants have explained, Section 12601's origins lie in the aftermath of the Rodney King beating and an effort by Congress to provide a remedy to systemic police misconduct. MTD 16–17. The United States misconstrues Defendants' description of this history to mean that Defendants take the position that Section 12601's scope should be "limited to addressing Rodney King-like situations." Opp'n 19. But Defendants made no such argument; rather, Defendants accurately highlighted that Section 12601 was enacted to solve a problem—that the U.S. Attorney General and private litigants could not sue to enjoin systemic police misconduct and abuse—exposed by the Rodney King beating. MTD 2–3, 16.

When the United States confronts the history of Section 12601 on its own terms, the United States finds no purchase for the exceptionally broad power it contends Congress conveyed through the statute. Opp'n 11–12. Out of all the legislative history for the Police Accountability Act of 1991[4] that Defendants produced in support of their motion to dismiss, the United States can point to only one line that it claims supports its interpretation of Section 12601. Opp'n 11. But the United States takes even that line out of context and misrepresents its meaning. As the United States notes, the Committee Report states: "The standards of conduct under the Act *are the same as those under the Constitution*, presently enforced in damage actions under section 1983." H.R. Rep. No. 102-242, at 138. The preceding sentence, which the United States does not mention, states: "The Act does not increase the responsibilities of police departments or impose any new standards of conduct on police officers." Therefore, the Committee Report merely states that the

[4] The United States does not dispute that, to the extent legislative history is relevant, the legislative history of the failed Police Accountability Act of 1991 bears on the meaning of the similar, later-enacted Section 12601. *See* Opp'n 11–12.

Act would not impose standards beyond those already required under the Constitution. The Committee did not, as the United States posits, report that the Act "create[s] an extremely broad remedy for the United States to redress violations of any constitutional right." Opp'n 12. Moreover, the United States's argument that Section 12601 grants it the same authority that Section 1983 grants to private individuals, Opp'n 12, cannot be reconciled with the fact that the 1991 Act, as originally drafted, included a cause of action for private individuals. If, as the United States argues, that Act was coextensive with Section 1983, then extending its cause of action to private plaintiffs would have been meaningless and unnecessary.

The United States also misunderstands the relationship between *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980), and Section 12601. Opp'n 12. Section 12601 did not "overturn" *City of Philadelphia*. In that case, the Third Circuit rejected the United States's argument that it had "*implied* authority" to seek an injunction against systemic, rights-depriving conduct by Philadelphia police officers under either "the criminal provisions of the Civil Rights Act," 18 U.S.C. §§ 241–242, or "the fourteenth amendment itself." 644 F.2d at 189–90 (emphasis added). In other words, *City of Philadelphia* made clear that, absent an *explicit, statutory* grant of such authority, the United States lacked it. The Committee Report on the 1991 Act that was a precursor to Section 12601 confirms that Congress enacted Section 12601 to confer the explicit statutory authority that the United States lacked to challenge the police conduct at issue in *City of Philadelphia*, that is, the specific authority to enjoin "a pattern or practice of depriving persons of [constitutional] rights" through law enforcement misconduct. *City of Philadelphia*, 644 F.2d at 189–90; *see* H.R. Rep. 102-242, at 137.

The United States apparently agrees that Section 12601 was enacted to confer the statutory authority it lacked when *City of Philadelphia* was decided, Opp'n 12, yet inexplicably claims Section 12601 confers upon it far broader authority than it

would need to obtain an injunction against the systemic police misconduct at issue in that case. Not only does this expansive reading ignore Section 12601's text, *see supra* at 3–7, it misunderstands the scope of the problem that Section 12601 solved.

Critically, the limitations on the United States's implied authority to seek equitable relief described in *City of Philadelphia* were only a problem in light of the nearly insurmountable challenges private individuals faced in obtaining injunctions against systemic police misconduct under *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). In that case, the Supreme Court held that, to seek an injunction against systemic police misconduct, a plaintiff must establish that she is personally likely to experience such misconduct in the future. *Id.* at 106. That bar is very high. Indeed, the plaintiff in *Lyons* was personally subjected by police to an unconstitutional chokehold, and the Los Angeles police had "applied chokeholds on at least 975 occasions," resulting in 16 deaths. *Id.* at 115–17 (Marshall, J., dissenting). But the Supreme Court considered it "no more than speculation" that Lyons would experience an unconstitutional chokehold in the future, and thus held that he lacked standing to pursue an injunction. *Id.* at 108 (majority op.).

Section 12601 reflects Congress's intention to close the "gap" that existed from the combination of the limitations on the ability of private plaintiffs to obtain injunctions against systemic police misconduct imposed by *Lyons* and the limitations on the United States's authority recognized in *City of Philadelphia*. *See* H.R. Rep. 102-242, at 137 (discussing both *Lyons* and *City of Philadelphia* in describing the "gap" it intended to remedy by "authorizing the Attorney General … to sue for injunctive relief against abusive police practices"). Contrary to the United States's argument, Opp'n 12, it was not limitations on its authority alone that gave rise to the "gap" Section 12601 remedies.

In contrast to the remedial gap that concerned Congress in the early 1990s with respect to systemic police misconduct, there was—and still is—no "gap" with respect to facial challenges to state laws. At the time Section 12601 was enacted in

1994, private litigants could facially challenge state laws under Section 1983 (as they can now). *See Monroe v. Pape*, 365 U.S. 167, 173 (1961) (recognizing, in 1961, that Section 1983 "prohibits any invidious legislation by States against the rights or privileges of [U.S.] citizens"). The litigants in such Section 1983 cases did not face the same standing difficulties faced by those seeking to enjoin systemic police misconduct. And private litigants who want to challenge the facial constitutionality of the UHA and AB 1127 provisions have already used Section 1983 to do so. *See Boland v. Bonta*, 662 F. Supp. 3d 1048 (S.D. Cal. 2023) and *Renna v. Bonta*, 667 F. Supp. 3d 1048 (S.D. Cal. 2023) (challenging the UHA); *Jaymes v. Bonta*, No. 3:25-cv-02711 (S.D. Cal.) (challenging AB 1127).

In other words, there was and still is a mechanism—Section 1983—for private litigants to challenge the facial constitutionality of state laws. Section 12601 was not adopted to allow the United States to do the same, but rather to address the lack of *any* effective vehicle—particularly for the United States—to curb systemic police misconduct. Had Congress instead intended to grant the Attorney General his own version of Section 1983, Congress could have simply amended Section 1983 to that effect. Indeed, that was the course proposed in an early version of the Civil Rights Act of 1964. *See* H.R. 7152, 88th Cong., 1st Sess. (Comm. Print October 2, 1963) (proposing to amend Section 1983 to permit an action by the Attorney General whenever any person has engaged or is about to engage in "any act or practice which would give rise to a cause of action pursuant to" the existing language of Section 1983); *City of Philadelphia*, 644 F.2d at 197 (discussing proposal). But Congress has repeatedly rejected such broad proposals, *see City of Philadelphia*, 644 F.2d at 195, instead adopting narrower provisions, like Section 12601. *See* MTD 19–20.

///

///

///

### 2. The United States's Past Use of Section 12601 Is Inconsistent with Its Current Interpretation

Before its recent spate of Section 12601 actions seeking to overturn states' firearm safety laws, the United States had never, in the decades since Section 12601 was enacted, used it to facially challenge the constitutionality of state laws. MTD 18. The United States responds that its past practice does not "cabin" the scope of the statute, and that it cannot have lost the ability to utilize the full scope of Section 12601 just because it never tried to use it before. Opp'n 16–19. But Defendants never claimed that the United States lost an existing cause of action due to nonuse. Rather, Defendants argued that Section 12601 *never* authorized the kind of action the United States now brings, and the fact that the United States never before claimed that it did is strong evidence that its new interpretation is incorrect. MTD 17 (citing *Learning Res., Inc. v. Trump*, 607 U.S. 229, 250 (2026)). The Supreme Court expressly approved use of a government's past practice to confirm the textual interpretation of a statute in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024); *see* MTD 18. Defendants do not claim that the case "supports an extratextual gloss on Section 12601," nor that the Court is "bound" by the United States's past practices. Opp'n 18.

The United States claims its past use of Section 12601 has been broader than "Defendants suggest," because past enforcement actions addressed civil rights issues other than "police brutality," including First Amendment violations. Opp'n 16–17. Defendants never argued that Section 12601 only reaches certain civil rights violations associated with "police brutality." The United States unquestionably used Section 12601 in the past to enjoin conduct by law enforcement officers that violated a variety of civil rights, including rights outside of the Fourth Amendment violations that may be most closely associated with "police brutality." This is well-documented in the reports on the United States's past Section 12601 practice that Defendants submitted with their request for judicial notice. *See* Exs. C–D to Req.

Judicial Notice, ECF No. 29-5, 29-6. But what all those previous actions have in common—and what distinguishes them from the action the United States brings now—is that they addressed some pattern or practice of law enforcement misconduct, not the facial constitutionality of state laws. There is no reason Section 12601 could not reach Second Amendment violations—as long as they arise from a sufficiently alleged pattern or practice of conduct by law enforcement officers, which is not the case here. *See supra* n.3.

The United States next claims that it *has* used Section 12601 to remedy law enforcement officers' enforcement of unconstitutional laws, referencing a report about the Ferguson Police Department. Opp'n 15. However, the complaint it filed following that investigation did *not* allege that Ferguson's municipal ordinances themselves were unconstitutional. Complaint, *United States v. the City of Ferguson*, No. 4:16-cv-00180 (E.D. Mo., Feb. 10, 2016), ECF No. 1. Instead, it alleged "a pattern or practice of conduct by law enforcement officers that deprives persons of their rights under the First, Fourth, and Fourteenth Amendments." *Id.* ¶ 188. Specifically, it alleged that the defendants unreasonably stopped, searched, detained, cited and arrested people; used objectively unreasonable force; infringed upon free expression; intentionally prosecuted and resolved municipal violations in a manner that violates due process and equal protection; and intentionally engaged in racially discriminatory law enforcement conduct against African-American persons. *Id.* ¶¶ 184–88. Contrary to the United States's assertion, the case filed against the Ferguson Police Department does not demonstrate a prior instance of Section 12601 being used to facially challenge a law's constitutionality.

Finally, the United States argues that a recent settlement agreement[5] with the Los Angeles County Sheriff's Department ("LASD") constitutes a prior instance in which Section 12601 was used to address a violation of the Second Amendment.

[5] The Court has not approved the settlement agreement, so it is not a consent decree as the Opposition claims.

Opp'n 2. That case alleged a "systematic practice of delaying the processing of concealed carry weapon permit applications." *United States v. LASD*, Case 2:25-cv-09323 (C.D. Cal.), ECF No. 1 at 8. The United States did not claim that any *law* was unconstitutional, and the settlement agreement does not enjoin the enforcement of any law. Importantly, a settlement agreement can hardly be sufficient demonstration that Section 12601 can be used in the manner advocated by the United States when that court has not even ruled on that issue, and Paragraph 4 of the settlement agreement explicitly states that "nothing in the agreement will be construed as an admission or evidence of liability of the LASD or its officials, under 34 U.S.C. § 12601." Case 2:25-cv-09323, ECF No. 36 ¶ 4. Therefore, *LASD* does not support the use of Section 12601 to facially challenge California's firearms laws.

## II. Defendants Properly Requested Judicial Notice of Legislative History and Government Documents

The United States urges the Court to deny Defendants' motion on the grounds that they "attached voluminous materials to their motion." Opp'n 3–5. However, the United States apparently objects to only two of the documents for which Defendants request judicial notice: two reports that the *United States Department of Justice itself authored* and published reporting on its use of Section 12601. *Id.* at 4. The United States objects to judicial notice of these documents on the grounds that it purports to dispute facts within them. *Id.* at 4–5.

Defendants properly requested judicial notice of these materials under Federal Rule of Evidence 201(b). The United States does not respond to or otherwise dispute the authorities cited in the Request that official government publications are judicially noticeable, or that the Court may consider noticeable documents in consideration of a Federal Rule of Civil Procedure Rule12(b)(6) motion. MTD 3–5, 8–9; RJN, ECF No. 29-2. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding courts "ordinarily examine … matters of which

a court may take judicial notice" in considering Rule 12(b)(6) motions). None of the United States's arguments refute the proper basis for judicial notice of these two reports.

The United States opposes judicial notice of these two documents on the grounds that there is a "factual dispute." Opp'n 5. But the dispute appears to be over the conclusions Defendants drew from the reports pertaining to the United States's past use of Section 12601 and how Defendants use them to support their argument, not over the accuracy of any facts within the reports themselves. *Id.* (arguing Defendants cannot use the reports to show "the Departments' enforcement actions can only be narrowly focused as Defendants suggest"). The United States does not identify a single fact within *its own* reports that it now contends is false or inaccurate. The United States's effort to run away from its own prior publications further undercuts its effort to use Section 12601 in the extraordinarily broad manner it seeks. While the United States contends that it has evidence to show Section 12601 has been used in this way previously (which it does not, *see supra* 17–19), that is not a dispute about the facts within the reports of which Defendants seek judicial notice. This is a legal dispute about what might be relevant to the Court in interpreting the scope of Section 12601.

Regardless, Defendants provided sufficient legal grounds arising from the face of the Complaint to require dismissal independent of the judicially noticeable documents. Defendants cited these documents only to demonstrate that the United States's past use of Section 12601 conforms to its plain language and legislative history, and not the United States's new, expansive, and atextual reading of it. Even if the Court were to deny judicial notice of these documents and decline to consider them, Defendants raised ample grounds to grant their motion.

## III. THE COURT SHOULD DISMISS WITHOUT LEAVE TO AMEND

The United States does not request leave to amend if the Court grants Defendants' motion, and it does not propose any amendments that would cure the

defects with its complaints. Indeed, as discussed in the moving brief, amendment would be futile because there are no allegations the United States could add to its Complaint that would state a claim under Section 12601 here. MTD 20. The Court should therefore dismiss without leave to amend.

**CONCLUSION**

The United States does not state a claim under Section 12601. This Court should dismiss the Complaint without leave to amend.

Dated: September 1, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General

/s/ *Edward P. Wolfe*

GABRIELLE D. BOUTIN
VIVIANA M. HANLEY
CHRISTINA MCCALL
SABRINA T. MCGRAW
EDWARD P. WOLFE
Deputy Attorneys General
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,884 words, which:

_x_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: September 1, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General

/s/ *Edward P. Wolfe*

GABRIELLE D. BOUTIN
VIVIANA M. HANLEY
CHRISTINA MCCALL
SABRINA T. MCGRAW
EDWARD P. WOLFE
Deputy Attorneys General
*Attorneys for Defendants*